## Tonkin *versus* Baum.

1. Where one promised to pay a debt upon making a sale and receiving the money therefor, the Statute of Limitations begins to run, not from the date of the promise, but from the date of making said sale and receiving the money.

2. A debt, secured by a mortgage, unaccompanied by a bond or other personal obligation in writing, and which does not contain any express promise to pay it, may be recovered by the mortgagee, in an action in debt, on a parol promise to pay the mortgage debt, accompanying the mortgage.

October 15th, 1886.    Before Gordon, Paxson, Trunkey, and Sterrett, JJ.    Mercur, C. J., Green and Clark, JJ., absent.

Error to the Court of Common Pleas of *Cambria county:* Of October Term 1886, No. 191.

This was an action in debt brought by John B. Baum, to recover from V. Tonkin the sum of $1,300 alleged to be a balance of purchase money due from him on an undivided interest in a tract of land sold by the plaintiff to the defendant and one R. C. McCurdy, who afterwards assigned his interest to Hipps & Lloyd by articles of agreement dated May 24th, 1873. By this agreement the plaintiff agreed to sell to the second parties therein a tract of land, containing between ninety and one hundred acres, more or less, situated in Susquehanna township, Cambria county. The consideration was $5,000, in three annual payments, two thousand dollars on or before July 15th, 1873, one thousand dollars on the 1st day of June, 1874, and two thousand dollars on the 1st day of June, 1875, the parties of the second part agreeing not to cut more than two river rafts a year until the land was paid for, or security for the payment of the same was given.

On the 19th day of August, 1876, John B. Baum, the plaintiff, V. Tonkin, the defendant, and Uriah Lloyd, one of the firm of Hipps & Lloyd, and a brother-in-law of the plaintiff, met at the house of the defendant and ascertained the amount due upon the articles of agreement before referred to. By the settlement then made it appears that Hipps & Lloyd, as assignees of R. C. McCurdy, owed $1,075, and that V. Tonkin owed $1,300. Prior to the date on which the last payment fell due, June 1st, 1875, John B. Baum, the plaintiff, had prepared a deed for the land described in the agreement, which he had with him ready for delivery when the settlement was made on August 19th, 1876. It was then agreed between the parties that Hipps & Lloyd should give the plaintiff below their

note, with V. Tonkin as security, for $1,075, the amount due from them, and that V. Tonkin, the defendant, a mortgage upon his undivided interest for the sum of $1,300, the amount he still owed on the contract.   In pursuance of this arrangement the defendant delivered to the plaintiff a mortgage for his one undivided half interest in the land embraced in the articles of agreement, as security for the payment of one thousand three hundred dollars on the 15th day of July, 1877, with interest, which if duly made would render the conveyance void, and if default was made in the payment of the principal or interest therein mentioned, then John B. Baum was authorized to sell the premises above granted, or so much thereof as would be necessary to satisfy the amount due, with the costs and expenses allowed by law.    The mortgage was dated August 19th, 1876, and on the same day the defendant signed the note for $1,075, with Hipps & Lloyd as their security. The plaintiff then delivered the deed.   All the payments named in the agreement were then due.   By its terms the parties could cut only two rafts of timber in one year.   He thus retained the land and timber unless other security was given.    The deed was then delivered to Mr. Tonkin, the defendant below, for the grantees therein.    The purpose for which the deed was delivered to him was that he could sell the timber remaining upon the land when opportunity offered. This the defendant below soon after did to Merryman & Son, of Williamsport, who cut and removed part of the timber from the land.   The note given by Hipps & Lloyd and the defendant was paid to the plaintiff at different times by the defendant with the money received from the sale of the lumber.   The mortgage remained unpaid.   On March 1st, 1880, the plaintiff had the mortgage recorded.   On this a *scire facias* was issued and judgment obtained, a *levari facias* issued, the interest of the defendant below in the land sold to John B. Baum.

The plaintiff claimed in this action that on the 19th day of August, 1876, when the deed was delivered, the note of Hipps & Lloyd, and Tonkin, and the mortgage of the defendant, was received by the plaintiff in satisfaction of the purchase money remaining unpaid on the articles of agreement, that V. Tonkin, the defendant, made a parol promise contemporaneous with, and independent of the mortgage, to pay the plaintiff the sum of $1,300.    The defendant denies that he made any parol promise whatever to pay the plaintiff the amount for which the mortgage was taken ; that upon his failure to pay the plaintiff the mortgage was to be foreclosed and the land, or so much as was necessary, sold to pay the debt therein named, viz.: $1,300. The plaintiff accepted the interest in the land described in the mortgage owned by the defendant, and that alone as security

[Tonkin *v.* Baum.]

for the $1,300, payment to be enforced according to the terms of the paper given by the defendant when the deed was delivered. The defendant claimed that when the plaintiff caused a *scire facias* to be issued and obtained judgment upon the mortgage, and sold the land, the plaintiff had exhausted the only security asked for and accepted by him from the defendant when the deed was delivered. To sustain his allegations the plaintiff below offered evidence to prove the parol promise of the defendant on the 19th day of August, 1876. The defendant having amended his pleading by adding the plea of *actio non accrevit infra sex annos*, the plaintiff introduced evidence to prove that the defendant renewed his parol promise alleged to have been made on the 19th of August, 1876, on several occasions afterwards and prior to the issuing of the summons in this case on December 6th, 1882. The defendant denied the original parol promise as well as any subsequent renewals or parol promises to pay the $1,300, independent of the mortgage security.

The following is the charge of the court, JOHNSTON, P. J.

On the 24th day of May, 1873, an article of agreement was made between John B. Baum, the plaintiff, and Vincent Tonkin, the defendant, and Mr. McCurdy for the purchase of the land out of which this controversy has arisen. Afterwards McCurdy's interest was transferred to Hipps & Lloyd. On the 19th day of August, 1876, Mr. Baum made a conveyance to the defendant for this land. I believe that was the date of the delivery of the deed, though it was written some time before; I speak of the deed as not being executed till its delivery. Upon that occasion John B. Baum, the plaintiff and his brother-in-law, Uriah Lloyd, went to Cherrytree for the purpose of settling the balance of the purchase money and delivering the deed. It seems that $2,625 had been paid upon this purchase by these parties, Tonkin and Hipps & Lloyd, and $2,375 remained unpaid. They desired the deed, and out of this transaction arises the only question that is in controversy before you. It is true, the evidence has taken a wider range; but with that evidence you have nothing to do. That Vincent Tonkin made a bad bargain and suffered a loss from that bargain according to the testimony of both the plaintiff and defendant, does not weigh a feather in this case; you cannot take that into consideration at all in coming to your verdict. Where a contract is made the parties are required by law to stand by it, or suffer in damages for the breach of it. The transaction, then, at the office of John Eason, on the 19th of August, 1876, was the foundation of this action. It seems there were $2,375 due from these parties to the plaintiff, $1,075 by Hipps & Lloyd, and $1,300 by Vincent Tonkin, the defend-

ant.   If they had attended to their business as business men should, this controversy would never have arisen; and I may say, it was a transaction of a very unusual character.   When this deed was passed from John B. Baum to the party defendant here and the other parties, proper security should have been taken; but instead of that we find the singular fact of a bond being taken for the $1,075 with Tonkin as bail for the other parties, and a mortgage from Vincent Tonkin for the $1,300 that he was to pay, without any bond or note or anything to base it on.

Now, in the consideration of this case the mortgage is entirely out of the question, excepting as a basis for the amount, as fixing the amount, or the liability from one to the other; it is no other element in the case than that.   It was only a security upon the land; and so far as the mortgage itself was concerned, when it was unpaid, the only remedy that Baum had was the one he actually adopted, to proceed upon the mortgage, sell the land, and raise the money from it, or purchase it himself.   That is, then, out of the question; and it is not with that especially that we have to do.

The plaintiff here declares upon the debt created by a promise of Vincent Tonkin cotemporaneous with the deed, made at the same time with the deed, and upon which an action of debt is brought and is the subject of the action now before you.   You have to make out a case of this importance from the testimony of the witnesses who were present at the transaction.   And just here we may state that the defendant has asked us to instruct you as a matter of law, " that to take the case out of the Statute of Limitations by an acknowledgment made within six years, such an acknowledgment must be plain, unambiguous, express, and so distinct and palpable in its extended form as to preclude hesitation; therefore the verdict should be for the defendant."

I may say here, while we agree with the language of the point, " that to take the case out of the Statute of Limitations by an acknowledgment made within six years, such acknowledgment must be plain, unambiguous, express, and so distinct and palpable in its extended form as to preclude hesitation," [we cannot agree with its conclusion, that therefore the verdict should be for the defendant.   In other words, when we are asked to take the case from you entirely, we do not feel that we are justified in doing so; but we will submit that question to you, believing it a question for your determination and not for ours.]   (Ninth assignment of error.)

" Second, under the pleadings and the evidence in the case, the court should instruct the jury to find for the defendant."

4 AMERMAN —27

[Tonkin *v.* Baum.]

We decline to so instruct you.   (Tenth assignment of error.)

It will behoove you then, gentlemen, to carefully examine the testimony under the law as we have stated it to you.   The Statute of Limitations is a plea that is very much favored by courts; and, to take a case out of the provisions of the statute, the testimony must be very plain, clear, distinct, precise, and such as would give you no room for hesitation, not only as to the amount of money, but as to the character of it.   For instance, it is not sufficient for a man to acknowledge a debt generally, without referring to the particular paper which creates the indebtedness; and the reason, to a thinking man, is very observable.   It is to prevent old claims from being prosecuted, to encourage men in the prompt and regular transaction of their business, and to prevent perjury in the trial of verbal transactions years and years after they have occurred, when witnesses must and will necessarily differ in their recollection of the facts.

. Now as to the transactions of the 19th of August, 1876, witnesses have been called upon each side, and you are to take their testimony and scan it very carefully.   John B. Baum, the plaintiff, testified and you have heard his testimony.   He is the plaintiff in the case; still, he is made a competent witness, as the defendant is also.   You will further take into consideration the testimony of Uriah Lloyd, the other witness on the part of the plaintiff who was present at the delivery of the deed, and who is the brother-in-law of the plaintiff.   You have heard their testimony.   [Was it of itself of such a precise, distinct, unambiguous, and explicit character as to satisfy you that there was an actual, verbal promise in consideration of this mortgage or indebtedness, on the part of Vincent Tonkin, to pay this money, entirely independent of the mortgage?]   (Second assignment of error.)   Is the testimony clear to you upon that subject?   You heard what it was and will remember it better than we do.   You heard the testimony of Mr. Lloyd, which in the main, it occurs to us, corroborates the testimony, so far as it goes, of John B. Baum, though not so explicit.   [Does it, we repeat, satisfy your minds that there was a promise of the character required by the law to establish a case of this kind?]   (Third assignment of error.) If you should come to the conclusion that it does, then, gentlemen, you may refer to the testimony upon the other side. Vincent Tonkin, who is the party defendant here, takes the stand and swears that the arrangement was that the land should pay it; that he made no personal promise outside the mortgage.   'Squire Eason, an entirely disinterested witness, who was called, swore that he so understood the conversation.

[Tonkin *v.* Baum.]

Now, gentlemen, if you can reconcile the testimony of these four witnesses, do so. If you cannot, it will be your duty to decide which of them is entitled to be believed, under all the circumstances of this case. Of course it is alleged that Mr. Tonkin is a party here, that he is deeply interested; and it is urged that he was a loser by the contract; but this, as we stated before, cannot avail him in any way, except that it might give a tone to his recollection and his feelings that a purely disinterested witness would not have.

It is contended on the other side that, from their age and from feelings of interest in the matter, the plaintiff's witnesses, Messrs. Baum and Lloyd, are not so reliable as the other witnesses; and the fact is suggested that Mr. Baum has forgotten a quite material part of the transactions of that day, he not having any recollection of another paper that was signed at the same time. This testimony you must reconcile and dispose of in some way. If you believe this testimony, that will still not make out the case of the plaintiff. The Statute of Limitations has been here pleaded; and we instruct you as a matter of law that the Statute of Limitations would run from the time of that promise, because there is no proof in the parol testimony about any fixed time at which the money was to be paid, and it can only be ascertained by reference to the mortgage, if we recollect the testimony correctly; and if this is the testimony, we then instruct you as a matter of law that the Statute of Limitations would run from that day; and this suit, being brought more than six years after that conversation, would be barred by the Statute of Limitations.

But, gentlemen, there are subsequent conversations which would bring the case within the provisions of the Statute of Limitations, excluding the testimony of Uriah Lloyd and young Bowers upon that branch of the case, because an assumption, to take a case out of the Statute of Limitations, must be to the party himself or his authorized agent,—talk to a stranger could not have that effect; it is not like an admission, but it is an assumption that is sought to be proved—[discarding, then, the testimony of Uriah Lloyd and young Bowers, on that branch of the case, you will consider the testimony of 'Squire Baum, wherein he says subsequent admissions were repeatedly made to him, whether they were within the six years and not barred by the Statute of Limitations, and you will take into consideration whether they prove the case according to the terms of the law as laid down by the court. In other words any other subsequent admissions to Mr. Baum must be as broad, as full, and as clear, as the original promise was.] (Fifth assignment of error.) It must refer to the existing debt unconnected with the mortgage entirely. If

the testimony convinces you of that then your verdict should be for the plaintiff.

Mr. Tonkin denies any subsequent conversation at which he made any such admissions. You will compare this testimony, give it full consideration, and be governed by your best judgment in coming to a conclusion. [If the testimony satisfies you, as the point of the defendant has put it, that the acknowledgment was plain, unambiguous, express, and so distinct and palpable in its extended form as to preclude hesitation, then, gentlemen, your verdict should be for the plaintiff.] (Sixth assignment of error.) The plaintiff's counsel will send out a calculation, after showing it to the other side, which will relieve you from the necessity of calculating the interest, in case you find for the plaintiff.

If the evidence fails to come up to the measure required by the law to take the case out of the Statute of Limitations, then your verdict will be for the defendant.

I have only to answer the plaintiff's points:

2. That if the jury believes from all the evidence Tonkin promised to pay the amount of the purchase money set out in the mortgage, the verdict should be for the plaintiff for such an amount as they may find due, after deducting the proceeds of the sheriff's sale, with interest.

Answer. This is affirmed, as qualified by our general charge and by the point of the defendant. (Seventh assignment of error.)

3. That if from all the evidence the jury believes that Tonkin, within six years prior to the time of the bringing of this suit, promised and acknowledged to pay the amount of the purchase money set out in the mortgage, then the verdict should be for the plaintiff for such an amount as they find remains unpaid with interest thereon from the 19th of August, 1876.

Answer. This point would be correct with the explanations already made. (Eighth assignment of error.)

Verdict for the plaintiff in the sum of $1,300.

A motion for a new trial was overruled upon condition that John Baum, the plaintiff, convey to Vincent Tonkin, the defendant, the interest in the mortgaged premises acquired by him at the sheriff's sale on or before the first Monday in September next; and in default thereof a new trial is granted.

On the 11th of August, 1886, the plaintiff filed a deed to the defendant as directed. Judgment was thereupon entered upon the verdict, whereupon the defendant took this writ-filing *inter alia* the above assignments of error.

*John P. Blair* (*William H. Sechler* with him), for plaintiff in error.

*George M. Reade* ( *W. Horace Rose* with him), for defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, November 15th, 1886.

It is among the undisputed facts in this case that when the plaintiff below settled with Tonkin and Lloyd on August 19th, 1876, for the tract of timber land in controversy, there was due plaintiff, of unpaid purchase money, the sum of $2,375.00. A considerable portion of the purchase money had before that time been paid under the contract of 24th of May, 1873. Tonkins (defendant below) was anxious to have a deed of the land from the plaintiff in order to make title to the timber which he expected to sell, and did afterwards sell to H. Merryman & Sons, of Williamsport. When, therefore, the parties came together on the 19th of August, the plaintiff accepted from Hipps & Lloyd their note, with Tonkin as surety, for $1,075, which was the amount they owed, as assignees of McCurdy, under the agreement of May 24th. The amount due from Tonkin was $1,300, and for this he gave a mortgage upon the premises for $1,300. The plaintiff then executed and delivered to Tonkin a deed for the land.

The mortgage referred to was unaccompanied by a bond or other personal obligation in writing, nor did said mortgage contain any express promise to pay. This suit was brought in the court below upon an accompanying parol promise to pay the mortgage debt.

The plaintiff not only testified himself, but he also called other witnesses to prove that the defendant promised the plaintiff to pay the mortgage debt as soon as he sold the timber and got all the money therefor. It was in evidence and not controverted that he sold the timber to the Williamsport parties, and settled with them in full on June 4th, 1880. These facts were found by the jury upon what we regard as sufficient evidence. Indeed, the defendant practically admits the promise when he stated in his own testimony : " I promised, as I said before, to lift this mortgage provided I could make this sale and get the money in time ; that's all the promise of any kind that I remember, to lift this mortgage."

Much of the time upon the trial below was taken up with the question of the Statute of Limitations, and the assignments of error chiefly refer to it. As we view the case it does not involve the statute at all. The contract as proved was a conditional one. The defendant was to pay when he sold the timber and got the money. The testimony of the plaintiff and the defendant agrees substantially in this. The timber was sold, and it was sold to the parties he had in view when

the settlement was had and the mortgage given. The timber was settled for as before stated on June 4th, 1880. Until that time the plaintiff could not have sued upon the promise. The right of action had not accrued. This suit was brought December 6th, 1882. The Statute of Limitations is out of the case and this disposes of all there was in it.

Judgment affirmed.