Pennsylvania Company for Insurances on Lives and Granting Annuities et al., Appellants, *v.* Scott, Prothonotary, et al.

Argued January 5, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Joseph Neff Ewing,* with him *Samuel E. Ewing, Jr.,* of *Saul, Ewing, Remick & Saul,* and *Murray Forst Thompson,* for appellants.

*George Linton,* with him *Hugh D. Scott, Jr.,* for intervenor, appellee.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

This appeal involves the constitutional validity of the Act of July 2, 1937, P. L. 2751, 21 PS section 821a et seq., entitled: "An Act to protect the obligors or guarantors of bonds and mortgages, and owners of property affected thereby, and others indirectly liable for the payment thereof, by prohibiting, for certain periods, the foreclosure sale of mortgaged property at less than its fair market value; and prescribing the method of fixing the fair market value of said property."[1]

---

[1] In section 1 it is provided that "Before any execution shall issue against the mortgaged premises on the foreclosure of any mortgage, or on a judgment entered on any obligation secured by mortgage, the plaintiff or plaintiffs shall either—(1) file a statement in the court having jurisdiction over such execution, certifying, under oath, that he or they release and discharge the obligors and guarantors and any other parties liable, directly or indirectly,

The appellants, as trustees under a will, held a bond and mortgage dated June 19, 1925, in the sum of $9,000, secured on premises in Philadelphia. On July 7, 1937, for default in payment of principal, interest and taxes for the years 1935 and 1936, judgment for $10,512 was entered. August 19, 1937, appellants applied for a writ of levari facias directed to the sheriff to proceed with execution on the judgment. The respondent, prothono-

---

on the mortgage debt and the owners of the property affected thereby from all personal liability on the mortgage debt, interest, costs, taxes, and municipal claims; or (2) petition the court having jurisdiction to issue such execution to fix the fair market value of the property to be sold." The procedure on the petition to fix the fair value is specified. The petition, under oath, must aver the fair market value of the property, with the names and addresses of all parties directly or indirectly liable for the mortgage debt (section 2). Parties not named as defendants or served with the petition "shall be deemed to be discharged from all personal liability to the petitioner on the mortgage debt, interest, and costs" (section 4). After at least ten days' notice (by actual service or by publication in the manner set forth in section 4), a hearing is provided for. Plaintiff may then file a release of all defendants from personal liability to the extent of the fair market value of the property as alleged in the petition; if the defendant agrees, or if plaintiff will release at a higher figure acceptable by the defendant, the court is directed (section 6) to order the sale to proceed. If plaintiff fails to release, section 6 provides that testimony may be presented; the court, aided by appraisers appointed by it, shall then determine the fair market value, and allow execution. If, at the sheriff's sale the property does not bring the value fixed, section 7 requires that the sale be postponed for a period not exceeding six months, and if at the postponed sale the property still does not bring the value fixed by the court, the sale shall again be postponed for a like period (section 8). If at the second postponed sale no bid at least equal to the value fixed by the court is received, section 9 provides that "the court may order said sale confirmed to the highest bidder, or may postpone the sale in the same manner and subject to the same conditions as the previous postponements, for such further periods not exceeding in aggregate of one year, as the court shall deem equitable and just." Section 11 exempts from the operation of the act mortgages owned by certain corporations, the stock of which is owned by the Federal Government.

tary of the court below, declined to issue the writ on the ground of "the failure of your Petitioners to file a statement in Court releasing the obligors from personal liability or to have the fair market value of the mortgaged premises fixed by the Court upon Petition filed as required by the Act" in question. Appellant then applied for a writ of mandamus requiring respondent to perform his duty. The mortgagor, Richard S. Cross, intervened as a party respondent. The mandamus was refused and this appeal followed.

Appellants present four contentions: (1) that the act is a special law changing the method for collecting debts and enforcing judgments and prescribing the effect of judicial sale of real estate; (2) that, as to this mortgage, the Act violates the impairment of contract clauses of the state and federal constitutions; (3) violates the due process clause of the 14th amendment to the federal constitution, and (4) that the title is defective under Article III, section 3, of the state constitution. The appellees deny these contentions. As the parties seem to agree that the Act is not a moratory statute, it is unnecessary to discuss the nature and extent of the exercise of the power under which so-called emergency legislation of that character is sustained or rejected.

We think the Act is clearly a special law within the prohibited sense. Article III, section 7, of the constitution provides, inter alia, "The General Assembly shall not pass any local or special law . . . providing or changing methods for the collecting of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate." This prohibition deals with three subjects: (1) the method of collecting debts, (2) the method of enforcing judgments and (3) the effect of judicial sales of real estate. The act applies to the entire state and is therefore not a local law; it applies to mortgage debts existing when it was passed or thereafter created.

In examining the contentions of the parties, we must consider and apply the now well established test of sustainable classification. In *Ayars's Appeal,* 122 Pa. 266, at page 281, 16 A. 356, we said: "Some of the cases above cited have been quoted at considerable length for the purpose of showing that this court never intended to sanction classification as a pretext for special or local legislation. On the contrary, the underlying principle of all the cases is that classification, with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes, are, properly speaking, neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities. All legislation is necessarily based on a classification of its subjects, and when such classification is fairly made, laws enacted in conformity thereto cannot be properly characterized as either local or special. A law prescribing the mode of incorporating all railroad companies is special, in the narrow sense that it is confined in its operations to one kind of corporations only; and, by the same test, a law providing a single system for organization and government of boroughs in the state, would be a local law; but every one conversant with the meaning of those words, when used in that connection, would unhesitatingly pronounce such statutes general laws. But, as was said in *Scowden's Appeal* [96 Pa. 422], supra, 'classification which is grounded on no necessity and has for its sole object an evasion of the constitution' is quite a different thing.

"The purpose of the provision under consideration was not to limit legislation, but merely to prohibit the

doing, by local or special laws, that which can be accomplished by general laws. It relates not to the substance, but to the method of legislation, and imperatively demands the enactment of general, instead of local or special laws, whenever the former are at all practicable."

As our inquiry is whether the legislature has attempted, for the benefit of a special class of debtors, to change the method of collecting debts or enforcing judgments, we examine what may be regarded as a typical transaction to which the Act would apply, and compare it with other more or less similar transactions to see whether the class, created out of all the debtors in the state, is supported, as appellees must contend, by "a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others." The typical transaction is the borrowing by one of money from another; the borrower agrees to repay the loan. The agreement to repay may be shown in various ways; it may be (1) oral, or (2) by simple promissory note, or (3) by such note containing a warrant to confess judgment, or (4) by promissory note or notes secured by the deposit of collateral with specific power to sell for default, or (5) the security may be land in the form of a mortgage without an accompanying written obligation *(Tonkin v. Baum,* 114 Pa. 414, 7 A. 185), or (6) of a mortgage with a bond and warrant to confess judgment. The transaction may take other forms. If the borrower defaults and proceedings to collect become necessary, the lender must obtain judgment unless by the contract he has power to sell the collateral, or the mortgage trustee is authorized to sell in case of default as in *Bruckman Lumber Co. v. Pittsburgh Insurance Co.,* 307 Pa. 561, 162 A. 204. While the transactions creating the debt differ in form, there is no difference in the method of collecting the

debt by proceeding *in personam;* it is immaterial to the present inquiry, that, from early days, there have been several methods[2] of recovering a mortgage debt.

The absence of substantial basis for selecting the special class proposed in the statute, will appear even more clearly, we think, if the typical cases of two borrowers be considered, each having property of the same kind and amount, each in default in repaying a loan of —say $1,000—one creditor being secured by bond and mortgage, and the other by a bond without a mortgage or by a judgment note which, if under seal, is a bond. Judgment is entered in each case by means of the warrant to do so. Execution is necessary. Each defendant had land of the same value, in one case, mortgaged; in the other, not. What substantial basis can there be for discriminating between the two and allowing the judgment note creditor to resort to the usual method of collecting his debt and enforcing his judgment by immediate execution, and to change that method and deprive the other, or mortgage creditor, of precisely the same right the other lender had and, in addition, subject him to possibly two years' delay, together with a loss of interest and taxes, as provided by the challenged Act? There is nothing to justify the discrimination; to say that one creditor has a mortgage and the other has not, is not sufficient; such a difference is not a "necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others."

The eleventh section of the Act shows that the special class created in the first section was not even intended to include all mortgage judgment creditors, but that another class of mortgage creditors should continue en-

---

[2] *McCall v. Lenox,* 9 S. & R. 302; *Martin v. Jackson,* 27 Pa. 504, 510; *Tonkin v. Baum,* 114 Pa. 414, 7 A. 185.

titled to use the existing method of collecting debts. Section 11 provides: "The provisions of this act shall not apply to the foreclosure of any mortgage held by any Federal Land Bank or the Federal Farm Mortgage Corporation, if, at the time of said foreclosure, the United States of America owns a majority of the capital stock of such bank or corporation." In the brief of the appellee section 11 is referred to in these words: "Not being affected by section 11 the appellant therefore cannot attack the constitutionality of the act now before this court" citing *Com. ex rel. v. Reese*, 293 Pa. 398, 143 A. 127. Our reference to this section is made for the purpose of showing that the legislature itself intended to exempt, from the class it purported to create, other debtors who are in precisely the same position, the exception showing the arbitrary, and therefore unlawful, character of the classification. In endeavoring to understand the theory on which some mortgage creditors were put into the class and others excluded, it may be pertinent to inquire why Federal Land Banks and the Federal Farm Mortgage Corporation were excluded and other federal agencies[3] which may become holders of mortgages were left subject to the provisions of the Act.

Our attention has not been called to any federal law requiring the commonwealth to give a more favorable remedy to corporations whose stock is owned in whole or in part by the United States than is given to residents of the commonwealth. We have held that corporations

[3] Perhaps, among them, pursuant to the Federal Housing Administration Act (48 Stat. 1246 as amended, 12 USCA 1703(c) ); Mutual Mortgage Insurance Fund Act (48 Stat. 1249 as amended, 12 USCA 1710(e) ); Federal Savings and Loan Insurance Corporation Act (48 Stat. 1259 as amended, 12 USCA 1729(d) ); Home Owners' Loan Corporation Act (48 Stat. 129 as amended, 12 USCA 1463(d) (e) (f) (m) ). Home Owners' Loan Corporation is plaintiff in two foreclosure cases considered at this term: *Home Owners' Loan Corporation v. Edwards*, 329 Pa. 529, 198 A. 123; *Home Owners' Loan Corporation v. Eiden*, 329 Pa. 532, 198 A. 114.

whose stock is held by or for the federal government are subject to the process of the state courts: *Haines v. Lone Star Shipbuilding Co. et al.*, 268 Pa. 92, 110 A. 788; *Sullivan v. United States Shipping Board et al.*, 76 Pa. Super. Ct. 30; see, same case, 261 U. S. 146; *City of Philadelphia, to use, v. United States Housing Corp. of Penna.*, 82 Pa. Super. Ct. 343; same case, 280 Pa. 417, 124 A. 669.

Defective classification resulting in special legislation is illustrated in many reported cases. We shall refer to some of them. It has been held that a statute authorizing a prothonotary or a sheriff to sue before a justice of the peace for fees that had accrued during his term of office was the arbitrary creation of a special class; we said: "It is a special Act, in that it is designed for a particular purpose, and is applicable only to particular persons, and to them only for a limited period. In the special and restricted range of its operation, it undertakes, among other things, to regulate the practice before justices of the peace; it changes the method of collecting certain specified debts due and owing to particular persons during a certain period only; it extends the powers and duties of justices of the peace and constables; it changes the rules of evidence in the particular cases to which alone it applies. In these and other particulars it is clearly in conflict with the constitutional provisions above quoted": *Strine v. Foltz et al.*, 113 Pa. 349, 359, 6 A. 206.

Many of the legislative efforts to change the method of collecting debts have been in the field of mechanics' liens: *Vulcanite Portland Cement Co. v. Allison*, 220 Pa. 382, 69 A. 855, is important; section 28 of the Mechanics' Lien Act of 1901, P. L. 431, gave subcontractors and materialmen the right of attachment execution against the owner, or other party indebted to the contractor, for labor or materials furnished. It was held that, as such a method of collecting a debt was not available prior to the Act of 1901, the Act provided a new method and that,

as it was available only to a special class of creditors, the change was prohibited by the section of the constitution under consideration. The court referred to the fact that "the system of allowing recoveries by a certain class of creditors by means of a mechanic's lien had become the fixed policy of our law long before there was any constitutional barrier against special legislation"; and it was said that, since the system had been adopted long before the constitution of 1874, a fair construction of the constitution led "to the conclusion that the intention of its framers was not to prohibit legislation relating to old methods for the collection of debts or the enforcing of judgments recognized and in general use at the time of its adoption, but to prevent the enactment of local and special laws providing new methods or changing old ones and applicable only to particular localities or to special classes. The language of the constitution is that no local or special law shall be passed 'providing or changing methods for the collecting of debts or the enforcing of judgments.' This can only mean that the local or special legislation prohibited is such as provides new methods, not then in existence, or changes old methods, then existing, for these purposes. The mechanics' lien laws proper do not fall within this prohibition because they do not provide a new method for the collection of a debt or the enforcing of a judgment. The procedure under these statutes is an old method. It is a proceeding in rem, well understood and of general application at the time of the adoption of the constitution. These laws were founded upon the theory that those who furnished labor and materials in the construction of a building should have the right to file a lien against it, that is, against the structure itself into which their labor and materials entered, in preference to other general creditors, who had not directly contributed to the construction of that particular building. In such a proceeding the building could be taken even if the owner

had not contracted the debt. The act of 1901 provided a new remedy, a departure from the settled policy of the law relating to this subject, and gave the right to pursue the owner or other person indebted in a personal action, that is, by attachment. This new method would seem to be foreign to the whole system of mechanics' lien laws, and heretofore was no part of it. It is in the nature of an action in personam, while the old method was a proceeding in rem. Mechanics' lien laws proper, intended only to give the right of lien against the building itself and the ground upon which it was erected, as a security for the debt, do not contemplate anything in the nature of a personal action." (385-6)

At the risk of unduly prolonging this opinion we make another quotation from that case as an enlightening parallel to the illustration, suggested above, of the two borrowers, one giving his bond or judgment note for $1,000 and the other executing a bond and mortgage for that sum. At page 387, ELKIN, J., said: "There are no manifest peculiarities in the class of creditors mentioned in sec. 28 to create a necessity which imperatively demands legislation for that particular class. As an illustration of the preference given to the special class of creditors to which sec. 28 applies, let us assume that appellant company furnished 100 barrels of cement to the defendant, which were used in the building constructed by the garnishee as contractor, and that a rival cement company furnished the same amount of cement to the defendant, intended to be used in the construction of the building, but in fact not so used, and which remained the personal property of the defendant at the time of the institution of this proceeding. In such a case the appellant company, under the provisions of sec. 28, could become a preferred creditor by attaching the fund due from the owner or contractor, while the rival cement company could only be a general creditor of the debtor, in this instance a subcontractor. In personal actions of

this character there is no imperative necessity which would justify the singling out of a special class of creditors from the general creditors of a debtor. The liens of mechanics and material men against the building into which their labor and materials entered are protected by the settled policy of our law for more than a century, but there is no necessity, imperative or otherwise, for extending the system so as to prefer this class of creditors in personal actions."

In the same volume, 220 Pa., at page 603, 69 A. 1117, is reported *Vulcanite Paving Co. v. Philadelphia Rapid Transit Co.*, holding that the legislature lacked power to provide a special method by fi. fa. to collect a lien filed against the property of the transit company. *Taylor v. Carnegie Institute*, 225 Pa. 486, 74 A. 357, decided that the statute could not authorize such a lien against a building without reference to the land with the right to sell and remove the building. In *Sterling Bronze Co. v. Syria Improvement Co.*, 226 Pa. 475, 75 A. 668, a special method of revivor of the lien was held invalid. In *Page v. Carr*, 232 Pa. 371, 81 A. 430, an act giving priority to mechanics' liens over advance money mortgages was condemned for the same reason. See also *Fluke v. Lang*, 283 Pa. 54, 128 A. 663; *Dyer v. Wallace*, 264 Pa. 169, 107 A. 754.

Passing from the mechanics' lien cases, we may note the effort in 1915, P. L. 261, to provide an attorney of record with a lien for compensation for his services upon his client's cause of action. The statute was held invalid, notwithstanding that, for some purposes, classification of particular trades, professions or occupations may be made. The court referred to the distinction "that the basis for classification must be reasonable and proper and founded upon a real, and not merely artificial, distinction between the members of the class and the general public, and based upon 'a necessity springing from manifest peculiarites, clearly distinguishing those of one class from each of the other classes, and im-

peratively demanding legislation for each class, separately, that would be useless and detrimental to the others' ": *Laplacca et ux. v. P. R. T.*, 265 Pa. 304, 108 A. 612. So, too, an act to give manufacturers and throwsters of cotton, wool and silk goods a lien upon a customer's property coming into their hands, was held invalid for the same reason: *Gerli v. Perfect Silk Throwing Co.*, 70 Pa. Super. Ct. 299. In *Wood v. Philadelphia*, 46 Pa. Super. Ct. 573, the Civil Service Act of 1906, P. L. 83, was declared invalid, because it provided that it should "not apply to any soldier, sailor or marine honorably discharged from service in any war for the United States Government nor to their widows or children."

In *Com. v. Casey*, 231 Pa. 170, the Act of 1897, P. L. 418, entitled "An act to regulate the hours of mechanics, workingmen and laborers in the employ of the state or municipal corporations therein, or otherwise engaged on public works" was declared to be in violation of the provision of Article III prohibiting "a local or special law . . . regulating labor, trade, mining or manufacturing." STEWART, J., said at page 179, "The basis of all classification is a difference in conditions. When difference in conditions exists to an extent that certain political subdivisions would be oppressed by general laws required for the welfare or convenience of certain other subdivisions, classification may be resorted to to provide proper legislation for each. When no such difference exists, classification is never allowed. It is impossible to suggest a difference between municipal corporations and private corporations that would make a regulation as to number of hours to be employed in a day suitable for one class unsuitable for the other. There is no pretense that there is any such difference. So far as labor is concerned, no more is involved in the construction of public works than in private enterprises of like character." *Com. v. Clark*, 14 Pa. Super. Ct. 435,

in an opinion by RICE, P. J., held that the Act of 1897, P. L. 116, prohibiting discharge of employees of corporations because of membership in labor organizations, was invalid under the same provision of the constitution. In *Pensylvania Co., etc., v. Philadelphia,* 262 Pa. 439, 105 A. 630, and in *Whitcomb v. Phila.,* 264 Pa. 277, 107 A. 765, an act fixing the rate of interest to be allowed in a special class of cases was, for that reason, held invalid.

Examples of proper classification may be found, inter alia, in *Miller v. Myers,* 300 Pa. 192, 150 A. 588, dealing with bulk sales; *Kennedy v. Agriculture Ins. Co.,* 165 Pa. 179, 30 A. 724, requiring foreign fire insurance companies to appoint agents for the service of process in this state; *Mason–Heflin Coal Co. v. Currie,* 270 Pa. 221, 113 A. 202, dealing with the requirement of a written memorandum under the Sales Act, and *Vinnacombe v. Phila., etc.,* 297 Pa. 564, 147 A. 826, providing for bringing in additional defendants.

It is as much a change in method of collecting a debt, or enforcing a judgment, to deprive a creditor of resort to an existing method by arbitrarily placing him in a special class, to whom the method is not available, as it is to give to members of a special class a remedy theretofore not available, as in the mechanics', the lawyers', or the throwsters' lien cases. At this point, perhaps, particular reference may be made to the relation of appellants to the transaction which resulted in the debt and judgment in their favor, and to the manner in which the provisions of the Act would bear upon their general fiduciary responsibility. The appellants are trustees. Trustees are limited by law in their investments unless given enlarged powers by deed or will. First mortgages on real estate are among the investments permitted. If the Act were valid a trustee could not enforce his contract without assuming the responsibility of releasing and discharging (in the words of the first section) "the obligors and guarantors and any other parties liable,

directly or indirectly, on the mortgage debt and the owners of the property affected thereby from all personal liability on the mortgage debt, interest, costs, taxes, and municipal claims," or of taking the risk of having the court prevent execution for a period that may extend as long as two years; during that period (and it is a possibility which the trustee would have to consider) no income would be received for his cestui que trust, and, which would be still worse, the mortgaged property might meanwhile be sold for delinquent taxes. If the trustee sought to take possession for default, his right might be resisted and a long time elapse before an ejectment could be concluded. The trustee's conduct in either event might, and doubtless would, subject him to a defense of his conduct in proceedings at the audit of his account. The effect of the proposed classification would make it impracticable for trustees to invest in mortgages of real estate. These considerations are mentioned as important in determining whether there is any "necessity springing from manifest peculiarities, clearly distinguishing those of one class [i. e., persons holding mortgages as security] from the other class [creditors loaning on the security of bonds or judgment notes] and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the other."

Reference was made in the argument to special remedies available to mortgage creditors ever since colonial times, as basis for the recognition, since the constitution of 1874, of the continued legislative power to deal specially with such creditors notwithstanding the prohibition against special legislation in Article III, section 7. But the contention cannot be accepted, for the same reason that a similar contention was rejected when it was proposed to extend the right of lien for labor and materialmen beyond what they had been prior to the adoption of the constitution.

Obtaining judgment *in rem* on two returns of nihil habet is one method; obtaining judgment *in personam* is another. The act changes the method of enforcing the mortgage creditor's judgment in personam without making the same change in the method by which other judgments for debt are enforced.

Our conclusion that this Act is invalid does not disable the legislature from enacting moratory legislation if it should be found desirable.[4] Such legislation, if general in application, may of course be sustained if consistent with other constitutional limitations. The Act of 1842, P. L. 407, considered in *Chadwick v. Moore*, 8 W. & S. 49 (1844) was a general law applying to all judgment creditors, not to a special class, although the constitution then in effect contained no prohibition against special legislation; the court declined to hold the Act invalid as impairing the obligation of contracts in the circumstances stated by GIBSON, C. J. The case does not, as suggested in appellee's argument, sustain the class legislation of the Act of 1937; it has nothing to do with that subject. Nor does our conclusion that this act is invalid leave judgment debtors—not only mortgage judgment debtors but all such debtors—at the mercy of execution creditors. As early as *Patterson v. Patterson*, 27 Pa. 40 (1856) we said: "The right of a Court of Common Pleas to stay an execution, or to prevent one from issuing on a judgment in said court, has frequently been recognized, and is very common in practice.

---

[4] "A fundamental distinction must be made between special moratoria applying to individual debtors or classes of debtors, and general moratoria affecting the whole community. The former have been found by experience usually more productive of evil than good. Applied in favor of particular individuals they have been the sources of corruption and uncertainty. The general moratorium, however, has been found again and again to be a vital necessity in critical periods." Feller, Moratory Legislation: A Comparative Study, 46 Harv. L. Rev. 1061.

"Where the order is to stay the execution indefinitely, as it is the final adjudication of one's right, it is the subject of revision, otherwise the party might be deprived of his judgment, or, what is the same thing, the fruits of it, without remedy.

"Whilst the power to stay execution of a judgment is necessary to prevent injustice, it should never be exercised unless the case is plain, and the equity of the party asking the interposition of the court is free from doubt or difficulty." In that case relief appears to have been granted upon the defendant's entering security to protect the plaintiff. The power was exercised in *Cake v. Cake,* 192 Pa. 550, 43 A. 971; *Augustine v. Augustine,* 291 Pa. 15, 139 A. 585; *Sinking Fund Com. of Phila. v. Phila.,* 324 Pa. 129, 188 A. 314; also see the concurring opinion of KEPHART, C. J., in *Beaver County B. & L. Assn. v. Winowich,* 323 Pa. 483, 513, 187 A. 921; *Hettler v. Shephard,* 326 Pa. 165, 191 A. 581.

Having reached this conclusion on appellant's first contention, it is unnecessary to discuss the others.

The order appealed from is reversed, the record is remitted for further proceeding not inconsistent with this opinion; each side to pay its own costs.