J. A15022/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NATIONAL AGENCY DEVELOPMENT, INC. AND CAREFREE INSURANCE MANAGEMENT, INC., | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| AF&L INSURANCECOMPANY, INC., | : : | |
| Appellant | : : | No. 1744 EDA 2015 |

Appeal from the Order Entered May 14, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2015-00117

BEFORE: FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 04, 2016**

Appellant, AF&L Insurance Company, Inc., appeals from the May 14, 2015, Order entered in the Bucks County Court of Common Pleas denying Appellant's Petition to Stay and Set Aside Writ of Execution ("Petition to Stay"). After careful review, we conclude that (i) the amount subject to execution does not fall within the terms of AF&L's agreement with the Pennsylvania Insurance Department, and (ii) the trial court did not abuse its discretion in finding no equitable grounds sufficient to grant the Petition to Stay. Therefore, we affirm.

The trial court summarized the factual and procedural history as follows.

> AF&L Insurance Company, Inc. ("AF&L") is a Pennsylvania insurance company specializing in long-term care insurance for

individuals in nursing homes or assisted-care facilities. AF&L has twenty-nine (29) employees, nine (9) of which are part-time. Their annual payroll is approximately $2 million dollars.

Benedict Iacovetti was hired as the Chief Financial Officer of AF&L in July of 2002. After AF&L experienced financial instability, Iacovetti assumed the role of the company's President in 2007. Iacovetti testified that insurance companies in Pennsylvania have certain minimum requirements regarding the amount of capital surplus in order to lawfully operate within the Commonwealth. At [a hearing on the Petition] Mr. Iacovetti testified that AF&L was required to maintain a minimum capital surplus of $1,650,000.00. AF&L's most recent financial statements indicated a capital surplus of only $1,600.00. [On cross-examination, however, Iocovetti admitted that a recent quarterly statement shows Appellant has approximately $161,348,543.00 in total assets.]

By year's end in 2004, AF&L had approximately $20 million in pending claims and expected additional claims. In response to the company's unstable financial condition, the Pennsylvania Insurance Department initiated a Supervisory Order. AF&L was instructed by the Insurance Department, among other requests, to refrain from selling any new insurance policies.

Following negotiations with the Pennsylvania Insurance Department, AF&L entered into a "Confidential Agreement" [("Confidential Agreement")] on February 25, 2005. The Agreement was signed by AF&L's Chief Executive Officer Jim McDermott, as well as Insurance Department Commissioner Steven Johnson. According to Iacovetti, the Agreement was intended to protect the remaining assets of AF&L from misuse or dissipation. Furthermore, it provided an opportunity for AF&L to avoid either formal rehabilitation or its outright liquidation. AF&L has allegedly complied with all aspects of the [Confidential] Agreement, and has not sold any new insurance policies since entering the [Confidential] Agreement in February 2005. They do, however, continue to collect premiums from policyholders, which they then use to compensate agents and to pay taxes.

In 2008, the Circuit Court of the 11th Judicial Circuit for Miami-Dade County, Florida entered a judgment in the amount of $541,651.63 against AF&L and in favor of National Agency Development, Inc. and Carefree Insurance Management, Inc. In order to satisfy this judgment, National Agency Development,

> Inc. and Carefree Insurance Management, Inc., garnished funds on deposit from AF&L's accounts at Santander Bank on February 19, 2015. These funds are being held in escrow by the attorney for National Agency Development, Inc. and Carefree Insurance Management, Inc.

Trial Court Opinion, filed 8/26/15, at 1-3.

Appellant filed a Petition to Stay and Set Aside the Writ of Execution upon the Florida judgment. After a hearing, the trial court denied the Petition to Stay by Order filed May 14, 2015. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

> Appellant raises the following two issues for our review:
>
> A. Whether the trial court erred in denying AF&L's Petition to Stay and Set Aside the Writ of Execution and the distribution of garnished funds held by Appellees' counsel where the unrefuted evidence established that AF&L, due to its hazardous financial condition, entered into an agreement with the Insurance Department that prohibits the transfer of AF&L's funds without the Insurance Department's approval.
>
> B. Whether the trial court abused its discretion in finding that there were no strong equitable reasons present to grant AF&L's Petition to Stay and Set Aside the Writ of Execution where Pa.C.R.P. 3121 where [*sic*] AF&L presented unrefuted evidence that the garnished funds belong to its policyholders and further that public policy favors the Insurance Department's efforts to informally rehabilitate AF&L.

Appellant's Brief at 5.

Our Supreme Court has held that while "the power to stay execution of a judgment is necessary to prevent injustice, it should never be exercised unless the case is plain, and the equity of the party asking the interposition of the court is free from doubt or difficulty." ***Pennsylvania Company For***

*Insurances, etc. v. Scott*, 198 A. 115, 122 (Pa. 1938). When reviewing a trial court's denial of a petition to stay a writ of execution, this Court gives great deference to the trial court's determinations, and will not disturb the trial court's ruling "unless our review of the record reveals a clear abuse of discretion or error of law below." *Anmuth v. Chagan*, 485 A.2d 769, 771 (Pa. Super. 1984).

With this standard of review in mind, we address the arguments raised by Appellant.

### Interpreting the Confidential Agreement

At the heart of Appellant's first issue is a disagreement between the parties regarding the proper interpretation of the Confidential Agreement between Appellant and the Pennsylvania Insurance Department. Appellant argues that the terms of the Confidential Agreement would have barred Appellant from voluntarily transferring funds to satisfy the judgment and that Appellees were therefore barred from obtaining the funds involuntarily through a writ of execution. Appellant's Brief at 14-22.

Our standard of review when interpreting a contract, such as the Confidential Agreement, is well settled:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing

itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 665 (Pa. Super. 2014) (internal quotation marks and citations omitted).

When determining whether the language of a contract is unambiguous, this Court looks to whether "we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." ***State Farm Fire & Cas. Co. v. PECO***, 54 A.3d 921, 928 (Pa. Super. 2012) (internal quotation omitted). "When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." ***Id.***

Appellant's Brief to this Court highlights four paragraphs of the Confidential Agreement which, Appellant summarily argues, barred the transfer of funds in this case. Those terms provide:

> 6. AF &L shall not make any single withdrawal of monies from its bank accounts nor make any single disbursement, payment, or transfer of assets in an amount exceeding 5% of its then aggregate cash and investments without the Department's prior written approval. The withdrawal of funds for investment purposes in compliance with Paragraph 7, below, shall not be subject to this paragraph.

> * * *

> 9. AF &L shall not loan monies to any person without the Department's prior written approval. Any loans provided for in policies of insurance shall not be subject to this paragraph.

> 10. AF &L shall not execute any new pledge or assignment of any of its assets without the Department's prior written approval. AF &L shall not, in any transaction or series of related

transactions, dispose of any fixed assets of plant, property or equipment having a book value of $100,000 or more, without the Department's prior written approval.

* * *

19. AF &L shall not consummate any material transactions, as defined in Chapter 27 of Title 31 of the Pennsylvania Code, with any person (whether or not affiliated) without the Department's prior written approval.

Confidential Letter of Agreement, dated 2/25/05, at 2-4.[1]

It is clear that the plain and unambiguous language of paragraphs 9 and 10 do not apply to the garnishment at issue. Paragraph 9 bars Appellant from loaning monies; the payment of a judgment, whether voluntarily or involuntarily, is not a loan. Paragraph 10 prohibits certain pledges, assignments, and the disposal of certain fixed tangible assets. Again, the payment of a judgment cannot reasonably be understood as a pledge, assignment, or disposal. Appellant has not presented any evidence or argument to this Court suggesting how these paragraphs could be understood to apply to this transfer.

Paragraphs 6 and 19 both include language requiring written authorization for any transfer involving more than five percent of Appellant's assets. Appellant argues that the proper inquiry is whether the garnished amount, $541,651.63, is more than five percent of their capital surplus, in this case $1,600.00. Because we instead conclude that the broad, but

---

[1] The Confidential Agreement does define any of the terms therein.

unambiguous, language in paragraphs 6 and 19 refers to Appellant's total assets of $161,348,543.00, we conclude that neither paragraph requires the approval of the Insurance Commissioner prior to the instant garnishment.

In particular, paragraph 19 prohibits certain material transactions, with the term "material transaction" defined by reference to Chapter 27 of Title 31 of the Pennsylvania Code. The Code requires "disclosure of material acquisitions or disposition of assets" where three requirements are met:

> (1) A single transaction, or a series of related transactions during a 30-day period, involves more than 5% of the insurer's total admitted assets as reported in the insurer's most recent annual statutory financial statement filed with the Department.
>
> (2) The transaction is nonrecurring.
>
> (3) The transaction is not in the ordinary course of business.

31 Pa. Code § 27.3 (emphasis added). Similarly, Paragraph 6 places limits on Appellant's ability to transfer more than five percent of its "then aggregate cash and investments."

Because they are not defined in the agreement, we consider the natural, plain, and ordinary meaning of the phrases "total admitted assets" and "then aggregate cash and investments." *See State Farm Fire & Cas. Co., supra* at 928. It is readily apparent that these phrases broadly encompass the total assets claimed by Appellant, and not some subset thereof. Construing either phrase to mean only Appellant's capital surplus would require this Court to impermissibly "modify the plain meaning under the guise of interpretation." *Stephan, supra* at 665.

Having determined that paragraphs 6 and 19 only apply to transactions of more than five percent of Appellant's total assets, we turn to the garnishment at issue in this case. Appellant's recently reported assets, testified to at trial, are $161,348,543.00. The garnishment amount, $541,651.63, represents less than one percent of Appellant's total assets, making Paragraphs 6 and 19 inapplicable. Therefore, we conclude that the Confidential Agreement has no bearing on the garnishment of this judgment, and Appellant is not entitled to relief on this claim.

## Equitable Grounds for Granting Stay

Appellant next argues that the trial court erred in denying the stay of execution "where Pa.C.R.P. 3121 merely requires a showing of any equitable ground." Appellant's Brief at 22-23. According to Appellant, because it presented evidence suggesting the garnished funds "belong to its policyholders" and that public policy favors the rehabilitation of distressed insurance companies, Appellant is entitled to a stay on equitable grounds. Appellant's reliance on Pa.C.R.P. 3121 is misplaced.

Rule 3121, which governs a court's authority to stay or set aside an execution of judgment, states in relevant part:

(b) Execution **may** be stayed by the court as to all or any part of the property of the defendant upon its own motion or application of any party in interest showing

　　(1) a defect in the writ, levy or service; or

　　(2) any other legal or equitable ground therefor.

* * *

    (d) The court **may** on application of any party in interest set aside the writ, service or levy

        (1) for a defect therein;

        (2) upon a showing of exemption or immunity of property from execution, or

        (3) upon any other legal or equitable ground therefor.

Pa.C.R.P. 3121 (emphasis added). Importantly, neither subsection mandates that a trial court **must** grant relief upon a showing of equitable grounds.

In the instant case, the trial court properly considered the arguments put forth by Appellant, as well as Appellee's arguments against finding equitable grounds for relief. The trial court then acknowledged, on the record, its discretion to set aside the writ "on any legal ground or equitable ground" before ultimately declining to exercise its discretion in the interest of justice. N.T. 5/13/16 at 55. Seeing no abuse of discretion, based on our review of the record and the arguments of the parties, we conclude that Appellant is not entitled to relief on this claim.

Based on the foregoing, we affirm the trial court's May 14, 2015 Order denying Appellant's Petition to Stay and Set Aside Writ of Execution.

Order affirmed. Jurisdiction relinquished.

President Judge Emeritus joins the memorandum.

Judge Jenkins concurs in result.

J. A15022/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016