# Strine, late Sheriff of Northumberland County, *versus* Foltz & Brother.

113 349<br>122 280

The Act of March 23d, 1877 (P. L., 25), entitled an Act "to empower the sheriff and prothonotaries of the several counties . . . . . to sue for their fees," undertakes to regulate the practice before justices of the peace; extends the powers and duties of justices of the peace and constables; it changes the method of collecting certain specified debts due and owing to particular persons during a certain period only; changes the rules of evidence in particular cases to which alone it applies, and is therefore a special Act, and within the prohibition of Article III., § 7, of the Constitution.

April 29th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county:* Of January Term 1886, No. 457.

This was a *certiorari* issued out of said Court, directed to

A. N. Brice, a justice of the peace, to remove into said Court the record and all proceedings in debt brought by George W. Strine, late sheriff of Northumberland County, against William H. Foltz & Brother, to recover fees due him for services rendered while sheriff as aforesaid.

The following are the facts of the case as given by the plaintiff in error in his paper book, and not denied by the defendant in error:

George W. Strine was sheriff of Northumberland County in 1877, and resided at Sunbury in said county. The defendants resided at that time in Bethlehem, in Northampton County, Pennsylvania. They caused suit to be entered in the Court of Common Pleas of Northumberland County against George H. Leibig, to No. 598, August Term 1877, issued a summons, took out a rule of reference, and a notice to arbitrators, all of which they had served by said Strine. The said suit was not prosecuted to judgment by the plaintiff therein. After the expiration of the official term of Strine as sheriff, he employed J. H. McCormick as his attorney in fact to collect all fees due him for official services performed. J. H. McCormick gave notice to W. H. Foltz & Brother of the amount of fees due George W. Strine, for his services as sheriff, with demand for payment, and a notice that suit would be brought for the recovery thereof under the provisions of the Act of 23d March, 1877, entitled "An Act to empower the sheriff and prothonotary of the several counties of this Commonwealth to sue for their fees." This notice was served January 31st, 1881. February 21st, 1881, a summons was issued, pursuant to the provisions of said Act, by A. N. Brice, one of the justices of the county of Northumberland, at the suit of George W. Strine, against W. H. Foltz & Brother, returnable February 28th, 1881, which was directed to the constable of Sunbury in said county. The same day James Vandyke, constable of Sunbury, deputized Edward M. Eberman, constable of Bethlehem, to serve the summons, who served the same on W. H. Foltz, February 23d, 1881, which was five days from the day of hearing. Service of the summons being returned in due form, upon the day of hearing the plaintiff appeared and proved his claim; the defendant not appearing, the justice on hearing gave judgment in favor of plaintiff for $17.40. Thus the matter stood for over four years, when on September 6th, 1885, the plaintiff had an execution issued directed to the constable of Sunbury, who deputed William T. Ache, of Bethlehem, to execute the same, whereupon the defendant sued out a writ of *certiorari* in the Common Pleas of Northumberland County, and filed the following exceptions to the record returned by the justice of the peace:

1. That the Act of Assembly, under which the suit was brought, is unconstitutional and void.

2. That the justice aforesaid had no jurisdiction of the persons of the defendants, the summons not having been served within his jurisdiction.

The Court, ROCKEFELLER, P. J., reversed the judgment of the justice, filing the following opinion :

The first section of the Act of 23d March, 1877 (P. L., 25), enacts, that "it shall be lawful for any prothonotary or prothonotaries, sheriff or sheriffs, of the several counties of this Commonwealth, within six years after the expiration of their official terms, to sue any person or persons residing out of the county wherein such prothonotary or sheriff shall reside, for the recovery of any fee or fees, in an action or actions of debt or assumpsit for official service performed, or hereafter to be performed for such person or persons, during such official term, before any justice of the peace within the county wherein such officer shall reside.  The writ of summons in any such case shall be directed to a constable in the county wherein the suit is instituted, which said constable is hereby authorized, by writing indorsed on such writ of summons, to depute any constable, in any other county in the State of Pennsylvania in which the defendant or defendants shall reside, to execute said writ.  By the second section the service of the writ of summons is to have the same force and effect as if served by a constable of the county wherein the action is commenced, and the justice of the peace is to proceed to trial and judgment as if the writ had been duly served within the county.

The third section authorizes suits to be brought by such officers to recover fees from the plaintiff before judgment, and from either the plaintiff or defendant after judgment in the Court of Common Pleas.

The fourth section provides for execution in any county of the State.

The fifth section enacts that " in all suits hereafter to be brought in any county by such officer or officers for the recovery of fees, a certificate of the prothonotary of the county wherein such suit is instituted, under his hand and seal of office, that any bill of fees appears by the record of his office to be correct, shall be *prima facie* evidence that such fees are lawfully due and correct."

The sixth section requires notice of at least ten days to the party or the attorney of record before suit brought under the Act.

The case before the Court is an action brought before A. N. Brice, Esq., a justice of the peace of the borough of Sunbury, Northumberland County, by George W. Strine, a late sheriff

[Strine *v*. Foltz et al.]

of said county, and who resides therein, against William H. Foltz & Brother, residents of the borough of Bethlehem, Northampton County. The plaintiff's demand is for fees as sheriff in the case of W. H. Foltz & Brother against one George Leibig, No. 598 August Term, 1877. The writ of summons was directed to the constable of the borough of Sunbury, who deputed the constable of Bethlehem. The writ was served at Bethlehem, the defendants did not appear, and the justice gave judgment in favor of the plaintiff for $17.40. The defendants took this writ of *certiorari*, and filed the following exceptions, to wit:

" 1st. That the Act of Assembly under which the suit is brought is unconstitutional and void.

" 2d. That the justice aforesaid had no jurisdiction of the persons of the defendants, the summons not having been served within his jurisdiction."

Doubtless the Act of Assembly in question was intended to remedy a seeming hardship. The officers named in it are frequently obliged to perform services before they have the right to demand their fees, and to oblige them, at great expense, to go to distant counties to bring suit against non-residents, is, in effect, to compel them to perform such services without compensation. On the other hand, in a foot note in Brightly's Purdon, page 385, it is said : " A summons issued by a justice of the peace is to be served, by the Act of 1810, at least four (should be five) days before the time of hearing. Is it possible that a citizen of Philadelphia may be required to attend before a magistrate in Erie County on four days' notice to answer a claim of five dollars or less ? This would be a mockery of justice. It cannot be termed ' due process of law.' "

If a citizen can be sued for a small sum at such a distance, no difference how good a defence he may have, he must pay the demand or make up his mind to spend, perhaps, five times the amount to attend the trial. With all this, however, we think the Court has nothing to do. Whether the Act in question is a good law or bad law is a question entirely for the legislature. The only question before us is the constitutionalty of the Act.

Article 3, section 7, of the constitution of Pennsylvania (Purdon, page 29) declares (amongst other things) that " the General Assembly shall not pass any local or special law regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery or other tribunals; or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judi-

cial sales of real estate." "Regulating the fees or extending the powers and duties of aldermen, justices of the peace, magistrates or constables."

Since the adoption of the new constitution several cases have been decided by the Supreme Court in which it has been held that certain Acts of Assembly were in conflict with said article, being special legislation, and therefore void: Commonwealth v. Patton, 7 Nor., 258; Montgomery et al. v. School Directors, 10 Id., 125; Scowden's Appeal, 15 Norris, 422. No case, however, has been cited which decides the question in the present case and I have not been able to find in any text book or American decision authority precisely to the point. If the Act in question extended to all officers there would be no difficulty in determining that it is a general and not a special law. The real question in the case is whether the Act is a general or special law, and, if it is a special law, is it that kind of a special law that the legislature is prohibited from enacting by the said section of said article of the Constitution?

The text books abound with definitions of general or public Acts and of special or private Acts. Blackstone says "a general or public Act is an universal rule, that regards the whole community; and of this the Courts of law are bound to take notice judicially and *ex officio*." . . . . . "Special or private Acts are rather exceptions than rules, being those which only operate upon particular persons, and private concerns:" 1 Blackstone, 59. Kent says "the most comprehensive, if not the most precise definition in the English books is, that public Acts relate to the Kingdom at large, and private Acts concern the particular interest or benefit of certain individuals, or of particular classes of men. Generally speaking, statutes are public; and a private statute may rather be considered an exception to a general rule. It operates upon a particular thing or private persons:" 1 Kent, 460. Sedgwick says the best definition is that given by Dwarris, "That public Acts relate to the public at large, and private Acts concern the particular interest or benefit of certain individuals or of particular classes of men." Dwarris on Statutes, 464. There are many cases in the books upon the distinction between public and private Acts. A note in Bacon's Abridgment, volume 9, page 231, also found in Chitty's Blackstone page 231, contains a note in the printed report from the committee for the promulgation of the statutes, in which it is said that "Acts are deemed to be public and general Acts, which the judges will take notice of without pleading, viz., Acts concerning the king, the queen, and the prince; those concerning all prelates, nobles and great officers; those concerning the whole spirituality; and those

which concern all officers in general, such as all sheriffs, &c. Acts concerning trade in general, or any specific trade; Acts concerning all persons generally, though it be a special or particular thing, such as a statute concerning the assizes, or woods in forests, chases, &c., &c. Private Acts are those which concern only a particular species, thing or person, of which the judges will not take notice without pleading them, viz. Acts relating to the bishops only; Acts for toleration of dissenters; Acts relating to any particular place, or to divers particular towns, or to one or divers particular counties, or to the colleges only in the universities."

There is no doubt but that a statute that extends to all officers is a public statute, but the question to be determined in the present case is whether a statute that relates, not to all officers, but to certain officers only, such as sheriffs and prothonotaries is a public or private statute. In England it is clear that such a statute is regarded as special. It will afford any one who has the time and takes· an interest, much pleasure, and, perhaps, instruction, if he will carefully read the reported English cases on the question in hand. The statute of Westminster, which says that no sheriff or other minister of the king shall take any reward to do his office, but be satisfied with what he receives from the king, was held to be a public statute, because it extends to all officers: 4 Rep., 76, Holland's case; Bacon's Abridgement, volume 9, page 233.

The statute of 23 Henry VI., cap. 9, relating to bail in civil causes, is reported in Roberts' Digest, page 82. This statute was enacted in 1444. Before this the sheriff was not obliged to bail one arrested on mesne process, unless he sued out a writ of mainprise, though he might have taken bail of his own accord. This arbitrary power, which sheriffs possessed, of bailing, or refusing to bail, produced great extortion and oppression. It took three hundred and forty-four years for the English courts to settle the question as to whether this is a public or private statute. In some of the cases it was held that it only relates to sheriffs, and is therefore a private statute, whilst in others it was held that, though it relates to officers of a certain description, yet all the king's subjects are included in it, for it gives to all of them the right to give bail. The following are a few of the cases in which the statute was held to be private: 2 Saund., 154; Benson *v.* Welby, 2 Plowd., 65; Sid. 439. The contrary was held in 2 Lev., 103; Okey *v.* Sell, 1 Lev. 83; Sid. 23; Samuel *v.* Evans, 2 Term Rep., 569; Lovell *v.* Sheriffs of London, 15 East, 320; 2 Saund., 155 note. All the cases are collected in Bacon's Abridgement. The last is the said case of Samuel *v.* Evans. That was a

well considered case and all the authorities on both sides cited by counsel and the Court. ASHURST, J. said: " If all the cases on this subject were on one side, however apparently contrary to reason they might be, the Court would be bound by them; but if there be several cases. which are not reconcilable with reason on one side, and one sensible case to the contrary, we ought to decide according to the latter. Now there can be no doubt on the reason of the thing, but that the statute of 23 Hen. IV., is a general law; for though it is said to relate to officers of a certain description, yet all the king's subjects are included in it, for it gives to all of them the liberty of being bailed." BUL-LER, J., in an opinion in the same case, said: "It is astonishing that a doubt could ever have arisen whether the statute 23 Hen. IV., c. 9 were a general law or not, for it alludes to all arrests, and every person who may be arrested is within the provisions of it." In Holland's case, 4 Co. 76, it was held that " office was a general word or genus; sheriff is a special word or species; and sheriff of Norfolk is *individuum;* and the statute 23 Hen. VI., c. 9, which extends only to sheriffs, is but a particular and special Act." It will be observed that all the cases holding the Act to be public, put it on the ground that all the king's subjects are included in it. It is therefore clear, I think, that at the common law an Act which relates only to a certain description of officers, such as sheriffs, prothonotaries, &c., is a special Act. That being so, the Act of Assembly in question in this case is clearly a special Act. Indeed, it only relates to certain persons or individuals after they have gone out of office, for it gives them the right to sue for fees " within six years after the expiration of their official terms." It is an Act relating to certain individuals, giving them privileges not given to all the citizens of the Commonwealth.

Then, if it is a special Act, is it such as is prohibited by the constitution? The legislature may pass special laws in all cases not mentioned in the article of the constitution referred to. I am of opinion that it is an Act regulating, in some sense, the jurisdiction of justices of the peace. It extends their jurisdiction throughout the whole state. It changes the rules of evidence. It makes a certificate of a prothonotary, that any bill of fees appears by the record of his office to be correct, *prima facie* evidence that such fees are lawfully due and correct. It is an Act providing or changing, in one sense, the method for the collection of debts, or the enforcing of judgments. It enables the party to recover a judgment against either the plaintiff or defendant in a suit, after a judgment has already been recovered in the suit in the Court of Common

Pleas of the county in which the fees accrued. Two judgments for the same cause of action would be recovered. I have come to the conclusion that the Act conflicts with the Constitution and is therefore void. The judgment of the justice and all proceedings are reversed.

The plaintiff thereupon took this writ, assigning for error the judgment of the Court reversing the judgment of the justice of the peace.

*C. M. Clement* and *J. Nevin Hill,* for plaintiff in error.— The power of the legislature extends throughout the State, and they have accordingly power to direct process to be served in any county of the State. The Act in question authorizes the service of a summons upon any person residing out of the county wherein the sheriff or prothonotary may reside. This is process; and when served as required by the Act, after notice, it brings the defendant within the jurisdiction of the Court, gives him the right to appear and be heard, and the right of appeal and trial by jury; this, according to all the authorities, is due process of law: Kennard *v.* Louisiana, 2 Otto, 480; Pennoyer *v.* Neff, 5 Id., 714; Davidson *v.* Board of Administrators of New Orleans, 6 Id., 97; *Ex parte* Wall, 17 Id., 265.

1. Is the Act special, in that it relates only to sheriffs and prothonotaries?

In construing the language of the Constitution of the State it must be remembered that it was framed by the people through a special body selected for the purpose, and not by the legislature. It is not to be construed by the rules of the common law which dealt with an unwritten Constitution, but by such rules as will give it the precise weight and effect which was intended by the framers at the time: Debates in Constitutional Convention, vol. 2, 604–609.

It is an axiom that all parts of an instrument relating to the same subject matter shall be construed together. The seventh section of Article III. of the Constitution enumerates what local or special laws shall not be passed; the eighth section prescribes the conditions under which local or special bills may be passed; they are therefore in *pari materia.* Taken together it seems to us they clearly indicate what the framers meant by "local or special law." The eighth section provides that, " no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated," &c. Herein we find a local or special bill to be one affecting some matter, thing or person situate or domiciled in a particular locality in the Common-

[Strine *v.* Foltz et al.]

wealth.   They referred to such acts as would perhaps concern all the inhabitants of a particular territory, but whose confines were less than the boundaries of the State, and would permit of other territories which might be subject to different laws. The plain intention, gathered from the language of the article, was to prevent all legislation that was not uniform throughout the State and applied alike to every class wherever domiciled. Not that every class of persons or things must be subject to the same law, but that all of each class must be governed and legislated for alike.

County officers are classified by the Constitution itself. Article XIV., § 1, designates the different classes of county officers, and provides that certain classes shall not be eligible to re-election.   Section 4 provides which classes of county officers shall have their offices in their county towns.   Section 5 provides that the compensation of county officers shall be regulated by law.   Section 7 provides a peculiar mode for the election of certain classes of county officers.     .

As to legislation for classes, see Wheeler *v.* Philadelphia, 27 P. F. S., 338 ; Kilgore, 4 Norris, 401 ; Commonwealth *v.* Patton, 7 Id., 258 ; Montgomery *v.* Commonwealth, 10 Id., 125 ; Davis *v.* Clark, 10 Out., 377 ; McCarthy *v.* Commonwealth, 16 W. N. C., 497.

2. The Act does not change the rules of evidence.   The certificate of the prothonotary would under the rules of evidence be *prima facie* evidence as a matter of record.

*Robert L. Cope,* for defendants in error.—The learned Judge below has conclusively demonstrated this Act to be special for the reason that it applies only to sheriffs and prothonotaries. The Act comes clearly within the constitutional prohibition. It was passed for a particular purpose ; it is an exception to a general law ; it relates to particular persons ; it relates to a class of a class of persons ; and it extends the powers of justices of the peace and of constables ; it changes the rules of evidence, the methods of collecting debts and enforcing judgments.

MR. JUSTICE STERRETT delivered the opinion of the Court, October 4th, 1886.

In February, 1881, suit was commenced by the plaintiff, then late sheriff of Northumberland county, before a justice of the peace in that county under the provisions of the Act of March 23d, 1877 (P. L., 25), to recover from defendants, residents of Northampton county, certain fees earned by him, as sheriff, in a case in which they were plaintiffs.   The summons, directed to a constable of Northumberland, was served in

Northampton county by a deputy residing there, but defendants did not appear.

Judgment having been rendered in favor of plaintiff, the record of the justice was removed by *certiorari* into the Court of Common Pleas, and exceptions were filed thereto as follows:

1. That the Act of Assembly, under which the suit was brought, is unconstitutional and void.

2. That the justice had no jurisdiction of the defendants, the summons not having been served within his jurisdiction.

Both exceptions having been sustained by the Court, the judgment of the justice and all proceedings before him were reversed and set aside. The record was then brought here for review. The vital question, here as there, is whether the Act under which the suit was brought is constitutional.

The first section declares, " It shall be lawful for any prothonotary or prothonotaries, sheriff or sheriffs of the several counties of this Commonwealth, within six years after the expiration of their official terms, to sue any person or persons residing out of the county wherein such prothonotary or sheriff shall reside, for the recovery of any fee or fees, in an action of debt or assumpsit, for official service performed or hereafter to be performed for such person or persons, during such official term, before any justice of the peace within the county wherein such officer shall reside; that the writ of summons, in any such case, shall be directed to a constable in the county wherein the suit is instituted, which said constable is hereby authorized, by writing indorsed on such writ of summons, to depute any other constable in any other county in the State of Pennsylvania, in which the defendant or defendants shall reside, to execute said writ."

The second section declares such service of the writ shall have the same force and effect as if served by a constable of the county wherein such action is commenced; and, upon return of service, the justice shall proceed to trial and judgment, upon which there shall be no stay of execution, as if such writ had been duly served in the same county.

The third section authorizes the officers named to sue for and recover fees from the plaintiff before judgment, and from either plaintiff or defendant after judgment, in any suit in which such fees shall have been earned.

The fourth section provides for execution in any county of the Commonwealth.

The fifth section declares, " In all suits hereafter to be brought in any county by such officer or officers for the recovery of fees, a *certificate* of the prothonotary of the county wherein such suit is instituted, under his hand and seal of

[Strine v. Foltz et al.]

office, that any bill of fees appears by the record of his office to be correct, shall be *prima facie* evidence that such fees are lawfully due and correct."

The sixth and last section requires at least ten days notice to the party or attorney of record before bringing suit.

Prior to the adoption of our present Constitution, pernicious class legislation similar to that contained in the Act above summarized, was of such frequent occurrence that to remedy the evil it was ordained in section 7, Article III. of the Constitution, among other things, that the "General Assembly shall not pass any local or special law . . . . . regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery, or other tribunals, or providing or changing methods for the collection of debts or the enforcing of judgments, or prescribing the effect of judicial sales of real estate; regulating the fees or extending the powers and duties of aldermen, justices of the peace, magistrates or constables; . . . . . nor shall any law be passed granting powers or privileges in any case where the granting of such powers and privileges shall have been provided for by general law, nor where the courts have jurisdiction to grant the same or give the relief asked for."

The Act in question is so manifestly in conflict with both the letter and the spirit of these constitutional provisions that a discussion of the subject beyond what may be found in the opinion of the learned President of the Common Pleas is uncalled for. He has pointed out very clearly wherein the Act is unconstitutional.

It is a special Act, in that it is designed for a particular purpose, and is applicable only to particular persons, and to them only for a limited period. In the special and restricted range of its operation, it undertakes, among other things, to regulate the practice before justices of the peace; it changes the method of collecting certain specified debts due and owing to particular persons during a certain period only; it extends the powers and duties of justices of the peace and constables; it changes the rules of evidence in the particular cases to which alone it applies. In these and other particulars it is clearly in conflict with the constitutional provisions above quoted.

Without further comment, we are fully satisfied with the conclusion reached by the Court below.

The judgment of the Court of Common Pleas, reversing the judgment of the justice and all proceedings thereunder, is affirmed.