Commonwealth ex rel. Margiotti *v.* Cunningham
et al., Appellants.

Argued November 27, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. A. Schnader,* of *Schnader & Lewis,* with him *Joseph S. Lord, III,* and *Gilbert W. Oswald,* for appellants.

*John J. McDevitt, Jr.,* with him *Joseph M. Leib,* for appellee.

OPINION BY MR. JUSTICE LINN, January 2, 1940:

Thomas W. Cunningham was sheriff of Philadelphia County from the first Monday of January, 1928, to the date of his death August 13, 1931. His executors appeal from a decree[1] requiring them to account for money[2] "representing costs paid by persons dealing" with him "while . . . sheriff . . . and . . . in his hands at the time of his death . . . and which are subject to the Act of April 8, 1937, P. L. 284", and money "of like character" coming into their hands subsequently. The total is composed of small balances of money deposited as indemnity by execution plaintiffs in circumstances described by the learned chancellor, as follows: "A sheriff is not required to render services in civil proceedings until he receives indemnity for, or prepayment of, his fees, costs and expenses, and, as the exact amount of his expenses cannot be determined in advance, it has always been the custom of sheriffs, in lieu of demanding indemnity from litigants, to require them to deposit a sum slightly in excess of the

---

[1] "2. That Thomas W. Cunningham, Jr. and J. Louis Breitinger, executors under the Last Will and Testament of Thomas W. Cunningham, deceased, shall, within thirty days, file in this case an accounting showing all moneys representing costs paid by persons dealing with the said Thomas W. Cunningham, while he was Sheriff of the County of Philadelphia, and which remained in his hands at the time of his death unreturned to the persons entitled thereto, and which are subject to the Act of April 8, 1937, P. L. 284, and also all moneys of like character which came into the hands of the said defendant executors subsequent to the death of the said Thomas W. Cunningham, together with any interest and earnings accrued thereon and the disposition thereof, taking credit in said account for all moneys returned to the persons from whom the same were received by the said executors or their decedent; and shall hold the balance shown by said accounting subject to further order of the Court."

[2] The 17th finding is: "Defendants now have in their hands upwards of $3000, representing excess deposits made by litigants or their attorneys for advertising and other costs with Sheriff Thomas W. Cunningham, in his lifetime."

estimated total costs and expenses of the service to be performed, and to refund any balance remaining after it is rendered and the actual expenses are known. These balances are small in amount, averaging less than $10.00 in each case. . . . The custom which produces this result is of such antiquity and has been so universally followed by sheriffs that its validity is not open to question, and there is nothing about the transaction to justify the allegations of the Bill that Sheriff Cunningham acted fraudulently in following the custom; especially since the Act of July 11, 1901, P. L. 663, as amended by the Act of May 23, 1923, P. L. 347,[3] recognizes the practice, and expressly provides that 'any money advanced for his [the sheriff's] charges, and not earned or expended by him, shall be refunded to the payer thereof.' "

The bill was filed in the name of the commonwealth; the decree was entered after hearing on bill, answer and evidence produced at the trial. Counsel who presented the case on behalf of plaintiff stated that he represented the city treasurer[4] and not the commonwealth. The sheriff's surety, the Fidelity and Casualty Company of New York, was a party defendant, but, as to it, the bill was dismissed.

The appeal involves the construction and application of the Act of 1937, P. L. 284, 16 PS section 1188, 3694 et seq., 27 PS section 282b. The appellant executors contend that the Act cannot constitutionally be applied to them. The title of the Act is: "AN ACT Requiring county officers and persons formerly occupying county offices in counties of the first class to pay over

---

[3] The Act now in effect is that of June 1, 1933, P. L. 1141, section 3, 16 PS section 2661c.

[4] The bill averred and the answer admitted that the treasurer of Philadelphia and the county commissioners had refused to institute proceedings under the Act. In this court, the petition of the treasurer of Philadelphia to become a party plaintiff was granted.

to the county treasurer for safekeeping certain unclaimed moneys, and providing for the payment of such moneys out of the county treasury to claimants, and for the escheat of unclaimed moneys."

Sections 1 to 4 of the Act provide: "Section 1. Be it enacted, &c., That whenever any moneys shall have been paid over to any county officer in any county of the first class which do not belong to such county officer, and no provision is made by law for the payment over of such moneys into the county treasury, if no claim for the payment over of such moneys shall be made by the party legally entitled thereto within a period of one year after the same shall have been paid to the county officer, or before the expiration of the term of office of such county officer, regardless of the time the same shall have come into his possession, then it shall be the duty of the county officer, upon the expiration of said one year period or upon the expiration of his term of office, as the case may be, to pay all of such moneys, together with any interest earnings thereon, over to the county treasurer for safekeeping, and to furnish to the county treasurer a statement of the source from which such moneys were derived, and the name of the person or persons, if known, who are legally entitled to such moneys.

"A copy of such statement shall also be filed with the controller. Such moneys shall be deposited in a fund separate and apart from all other public moneys and shall not be paid out for any purpose whatever, except as provided by this act.

"The receipt issued by the county treasurer showing the payment over of such moneys shall fully discharge the county officer or person making such payment and his surety from all liability whatever for the payment of such moneys to the person or persons legally entitled thereto.

"The provisions of this section shall apply to all moneys, and the interest earnings thereon, in the hands

of any county officer for the period of one year and
more prior to the effective date of this act. The pro-
visions of this section shall also apply to all persons
whose term of office as county officers shall have ex-
pired prior to the effective date of this act and who may
still retain any such moneys in their possession, and
such person shall be required to pay over to the county
treasurer all such unclaimed moneys, together with the
interest earnings thereon, within sixty days after this
act becomes effective and furnish to the county treas-
urer and controller a statement as in this section pro-
vided.

"Section 2. If, after such moneys have been paid
over to the county treasury, the person or persons le-
gally entitled thereto, if known, shall be notified to ap-
pear and claim the same, the moneys shall be repaid
from the county treasury on warrant of the county con-
troller after proof of claim to the satisfaction of the
county controller.

"Section 3. Hereafter no person shall, after the ex-
piration of his term of office as a county officer, be en-
titled to receive payment of any moneys arising from
official business transacted in the county office which
he occupied, but all such moneys shall be paid over only
to his successor in office, who shall become responsible
therefor and subject to the payment over of such moneys
into the county treasury as provided in this act. No
county officer shall, upon the expiration of his term
of office, remove from the county office, which he oc-
cupied, any official books, papers, records or documents
whatever, but the same shall be turned over to his suc-
cessor in office.

"Section 4. All moneys paid into the county treas-
ury, in accordance with the provisions of this act and
held for the benefit of any claimant or claimants, shall,
if no claim therefor is made within seven years from
the time the same was paid into the county treasury,
be escheated to the Commonwealth for the use of the

county: Provided, however, That at least six months before any such escheat shall take place, the county treasurer shall notify by mail the person, if known, entitled to any of such moneys of such contemplated escheat, and shall publish once a week for three successive weeks in two newspapers of general circulation, published in the county, a true and accurate statement of such proposed escheat, stating the amount to be escheated and generally describing the sources from which such moneys were derived: And provided further, That if it shall appear that claim for any such moneys was not made within said period of seven years because of pending litigation, then payment of any such claim shall be made out of the county treasury if such claim shall be presented within one year after the final determination of said litigation.

"So much of any provision of any act of Assembly relating to escheats as provides for a reward to informers of an escheat, shall not apply to any proceedings to escheat any moneys referred to in this section, but in other respects the proceedings to escheat such money shall be governed by the laws relating to escheats, now or hereafter in force, in like manner as if the county treasurer were an officer of the court of common pleas of the proper county."

The purpose of the suit, then, is to subject to the Act of 1937 unrefunded balances of the character described, amounting to "upwards of $3000", in the possession of appellants.

The appellee contends that the fund was held in a fiduciary capacity; appellant argues that the relation was that of debtor and creditor. For the purposes of this case it is immaterial what name is applied to describe the obligation; the important thing is its substance.

The Act of 1923, P. L. 347, 16 PS section 2662, authorized the sheriff and any one requiring his services, to contract for the sheriff's indemnity for the purposes

stated in the Act, which provided that if the indemnity took the form of "money advanced for his charges, and not earned or expended", the unused portion "shall be refunded to the payer thereof". These words created a direct obligation from the sheriff to the payer. The terms of the sheriff's bond, which are fixed by the Act of 1929, P. L. 1278, Art. III, sec. 183, 16 PS section 183, also provide that he must "pay or cause to be paid . . ." all sums in his hands belonging to litigants:[5] compare *Com. v. Comly,* 3 Pa. 372, and cases following it. The statutory obligation to refund may be enforced by an action in assumpsit: compare *Alexander v. Leckey,* 9 Pa. 120; *American Steamship Co. v. Young,* 89 Pa. 186, 192. The obligation was composed of the elements both of fiduciary nature and of the debtor-creditor relation. See *Potter Co. v. Page,* 53 Pa. Superior Ct. 268, 273 et seq.

In *Allegheny Bank's Appeal,* 48 Pa. 328, and in *Stair v. York Nat. Bank,* 55 Pa. 364, it was said that at the expiration of a sheriff's term, official funds are payable to his successor in office. That was the holding in *Trestrail v. Johnson,* 298 Pa. 388, 148 A. 493. Whether the funds in appellants' hands should have been delivered to Cunningham's successor in office is not before us for decision on this record. But their failure to make

---

[5] ". . . The condition of the above obligation is such that, if the said (A.B.) shall and do, without delay, according to law, well and truly serve and execute all writs and process of the said Commonwealth to him directed, and shall and do, from time to time, upon request to him for that purpose made, well and truly pay or cause to be paid to the several suitors and parties interested in the execution of such writs or process, their lawful attorney, factors, agents or assigns, all and every sum and sums of money to them respectively belonging, which shall come to his hands, and shall and do, from time to time and at all times during his continuance in the said office, well and faithfully execute and perform all and every of the trusts and duties to the said office appertaining, then . . ." (1929, May 2, P. L. 1278, Art. III, sec. 183, 16 PS section 183.)

payment to their testator's successor in office cannot be allowed to interfere with the right of a depositor to recover from them after they have taken control of the balance of his deposit; the money did not belong to Cunningham and does not belong to his estate. As between the executors, who hold it, and parties respectively entitled, the executors may discharge their testator's obligations by paying the parties entitled. Assumpsit, in which an accounting can be obtained if necessary, now affords an adequate remedy for one entitled to a refund, for, in the course of the proceeding, the court may order production of the sheriff's accounts of the transactions. But even if such a plaintiff receive judgment in his suit he will still be required to present it in the orphans' court which now has jurisdiction of the administration of Cunningham's estate; that court also has ample power to order the sheriff's records brought in and to adjudicate claims presented there and to order payment.

While on the subject of the jurisdiction of the orphans' court, another phase of appellees' argument may be considered before dealing with appellants' constitutional objections. It is said that the Act of 1937 provides a step in escheat; that (in the words of the brief) "Such moneys are to be turned over to the County Treasurer for safekeeping in a separate fund, and if they remain unclaimed for 7 years, they are to be escheated to the Commonwealth for the use of the County." The commonwealth's power to escheat is not challenged. Procedure for the safekeeping of escheatable funds is available in the orphans' court: see Act of April 9, 1929, P. L. 343, section 1314, 72 PS section 1314; *Link's Estate*, 319 Pa. 513, 515, 180 A. 1; and no reason has been suggested in this case why the commonwealth (or perhaps the court on its own motion, section 1314) should not proceed under that Act. If the lapse of time can be pleaded by the executors against the demand of one entitled to refund, that fact will not

prevent the declaration of an escheat: *Holmes v. Pattison,* 25 Pa. 484; see Act of June 7, 1915, P. L. 878, sec. 15, 27 PS section 261; *Germantown Trust Co. v. Powell,* 265 Pa. 71, 83, 108 A. 441. A debt, though barred by limitation, is still a debt: *Woods v. Irwin,* 141 Pa. 278, 293, 21 A. 603; lapse of time does not make the debtor's title absolute.

Assuming, but not deciding, that the Act of 1937 can apply to appellant executors, we come to the constitutional objections, and shall consider three of them. Article I, section 10, of the constitution of Pennsylvania, provides: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Article I, section 17, prohibits impairment of contracts. Article III, section 7, prohibits the enactment of a special law "providing or changing methods for the collection of debts".

(1) Appellee contends that appellants are not affected by the invalidity of the Act and are therefore within the rule that one unaffected by it may not challenge the constitutionality of a statute. An examination of the Act in its operation on the appellants will show that they are not within the rule invoked by appellee. Before the Act was passed the sheriff could be required to refund at the suit of a depositor. If the Act is invalid, the sheriff, of course, remains subject to suit as before. We then inquire whether the act has effectively changed this. Section 1 requires the sheriff to pay the remaining deposits to the county treasurer and adds that "The receipt issued by the county treasurer . . . shall fully discharge the county officer or person making such payment and his surety from all liability whatever for the payment of such moneys to the person or persons legally entitled thereto." It is on this provision that appellee depends for the proposition that appellants cannot question the validity of the statute. It is said that the sheriff is released by

his payment to the treasurer. If, however, the Act is invalid and the sheriff is not released but remains liable to pay to the depositor it will be no answer to the depositor's demand that the sheriff has paid his depositor's money to one not legally authorized to receive it. He would therefore be required to pay the depositor. If he has complied with the Act he will also have paid the county treasurer. The sheriff would be required to pay twice. The addition, by the statute, of a liability to make a payment to the county treasurer which will not discharge the liability to the depositor is a plain violation of the constitutional provision against taking property without due process. The appellants are thus directly affected.

Appellants' argument goes on to point out that the Act attempts to destroy the depositor's right of action to recover the refund, without providing an adequate substitute and so fails to afford due process. Section 2 provides that if one, entitled to a refund, "claim the same, the moneys shall be repaid from the county treasury on warrant of the county controller after proof of claim to the satisfaction of the county controller." No right of appeal is granted; compare section 504 of the Act of 1929, P. L. 343, 72 PS section 504. Does that provision of the Act of 1937 furnish an adequate substitute for the right of action theretofore existing? The substitute provided deprives a claimant of a judicial trial, and, instead, requires him to satisfy the controller. By what rules shall the controller be satisfied? Suppose he denies a claim and says that he is not satisfied with the proof, what then? Or, if in allowing prior claims, the controller has been mistaken and has exhausted the deposited funds, leaving nothing to pay a valid claim; from what shall the refund be made, the county not being required to supply money for that purpose? The right of the depositor to sue for the refund in some form of action is a property right. Compare *Com. ex rel. v. Brown*, 327 Pa. 136, 142, 193

A. 258. That right is taken away by the Act. While due process would be satisfied if an adequate substitute for the destroyed right were provided, the Act provides none. It contains no provision for appeal to a court from the controller's denial of the claim. If such a claim were presented to him for allowance, it would be his duty to act judicially; his function would not be ministerial; mandamus would not lie to control his judgment given or to be given in a judicial capacity: *Dechert, Controller, v. Com.*, 113 Pa. 229, 6 A. 229. In *Com. ex rel. v. Phila.*, 176 Pa. 588, 593, 35 A. 195, in which the controller's return was held insufficient, MITCHELL, J., said: "This act [the Mandamus Act of 1893, P. L. 345] was not meant, nor is it to be construed, to substitute mandamus for the writ of summons and the ordinary proceedings and trial. Our judgment does not countenance any such view but is only in the usual and regular course of the law where all the facts are admitted upon the record and only the result is to be pronounced. The contract, it is to be noted, was made by the board of education for a matter clearly within their department. They issued a warrant for payment which was returned to them unsigned by the controller and thereupon destroyed, supposing it to be functus officio. On the reopening of the subject by this litigation the board promptly issued a new warrant, made return of the facts, and submitted the case without objection to the claim. Had the board of education at any time indicated that there was any defense to this claim, it is clear that there could be no remedy by mandamus, but only by suit prosecuted to judgment in the ordinary course of law. But they have not done so. The only contest comes from the controller, and his grounds of objection, set out at length in his answer, show that none of them was founded on matters within his discretion. Had any of them been valid the court would not review his decision in regard to the facts, but when admitting all the facts none of the reasons

is sufficient, the courts and not the official must determine the rights of the parties. This is the rule even in cases of discretion vested in strictly judicial tribunals: *Johnson's License,* 156 Pa. 322; *Gross's License,* 161 Pa. 344; *Gemas's License,* 169 Pa. 43; and a fortiori must it be the rule where the discretion though ample and exclusive is reposed in a tribunal or an official who is only quasi judicial within prescribed limits." See also *Thayer v. McCaslin,* 314 Pa. 553, 171 A. 898. To sustain the Act in this respect, appellee relies on *Com. v. Dollar Savings Bank,* 259 Pa. 138, 102 A. 569, but the statute considered in that case gave a new right of action against the state to recover the deposits turned over by the bank; the depositor's claim was not, as here, restricted to the adjudication of a non-judicial forum; his right of action against the bank was taken away, but, for it, the law substituted the right to sue the state. Due process was satisfied by the substitution of a right of action against the state for the withdrawn right to sue the bank. As the Act of 1937 takes away the payer's right to sue the sheriff and substitutes only a demand on the controller, without judicial review, the statute denies to the depositor the due process guaranteed by the constitution; the Act is therefore not available against appellants because payment by them to the county controller would not be a good payment.

(2) The Act of 1923, under which the deposit was made, authorized the sheriff to make the contract of indemnity; the depositor's right to enforce the obligation by remedies then available or by an equivalent remedy was an element in the contract: *Beaver Co. B. & L. Ass'n v. Winowich,* 323 Pa. 483, 489, 187 A. 481; *Clark v. Phila.,* 328 Pa. 521, 528, 196 A. 384. By taking away the right, without providing an adequate substitute, the statute impairs the obligation of the contract contrary to the requirement of Article I, section

17, of the constitution. Compare *International Steel and Iron Co. v. National Surety Co.,* 297 U. S. 657.

(3) Article III, section 7, of the constitution, provides: "The General Assembly shall not pass any local or special law . . . providing or changing methods for the collection of debts." The Act of 1923, supra, provided that the sheriff would discharge his obligation by refunding the unused or unearned portions of the indemnity. As the obligation was composed of elements both of fiduciary nature and of the debtor-creditor relation it was enforcible by action of assumpsit; for present purposes it is immaterial to consider the extent that, if at all, equity might take jurisdiction to decree a refund, especially in view of the comprehensive procedure provided by the Practice Act of 1915, P. L. 483, section 11. The Act of 1937 takes away all remedies theretofore applicable to the enforcement of the obligation whether of fiduciary character or in the debtor-creditor relation and substituted a limited trial before the controller without judicial review. We can find no possible ground to support such a classification: *Penna. Co. etc. v. Scott,* 329 Pa. 534, 538 to 548, 198 A. 115; *Schoyer v. Comet Oil & Refining Co.,* 284 Pa. 189, 130 A. 413; in *Strine v. Foltz,* 113 Pa. 349, 359, 6 A. 206, an Act designed to give former sheriffs a right of action not common to other creditors was held invalid. But the learned chancellor, in disposing of preliminary objections to the bill, was of opinion that the Act did not deal with the collection of debts; that, as he said, "Its real object is to conserve apparently abandoned property for the benefit of the Commonwealth and the owner until the escheat occurs"; in that connection, he relied on *Com. v. Dollar Savings Bank,* 259 Pa. 138, 102 A. 569, considered earlier in this opinion. Examining the Act in the light suggested, it is to be noted that section 1 provides that the money to be paid to the county treasurer is "moneys . . . which do not belong to such county officer . . . if no claim . . . shall be

made by the party legally entitled thereto within a period of one year after the same shall have been paid to the county officer, or before the expiration of the term of office of such county officer, regardless of the time the same shall have come into his possession . . ." It applies, therefore, to money deposited—say, within the last month of the sheriff's term. Can there be any valid reason to abolish a recognized right of action against a limited class of debtors for money due for such a short period on the ground that it is proposed "to conserve apparently abandoned property for the benefit of the commonwealth and the owner until the escheat occurs" and allow other creditors the usual remedies? We cannot agree that indemnity so recently deposited can be regarded as "apparently abandoned", with the result that the owner must satisfy the county controller of the validity of his claim. The learned chancellor said, "In this respect it is identical in purpose with the Act of April 17, 1872, P. L. 62, which deals with unclaimed savings bank deposits in a manner closely analogous to that of the present act and which was held to be constitutional in the case of *Commonwealth v. Dollar Savings Bank*, 259 Pa. 138 . . ." The Act of 1872 related to deposits neither increased nor diminished for 30 years. But, instead of limiting a depositor's right of recovery to satisfying a single non-judicial officer, the Act gave a remedy to the owner by suit against the commonwealth to whom the bank was required to turn over the deposits. The escheat provisions in the Fiscal Code, sec. 504 of the Act of 1929, P. L. 343, 370, 72 PS section 504, also provide for recourse against the state: see *Link's Estate*, 319 Pa. 513, 516, 180 A. 1. The Act of 1937 applies to deposits made "before the expiration of the term of office", that is, all deposits, however recent, without substituting a lawful remedy. Such classification cannot be justified.

A number of other grounds for sustaining the appeal were relied on, but as any of the three that have been con-

sidered require the dismissal of the bill, it is unnecessary to lengthen this opinion by referring to others; for the present they may be laid aside.

The decree is reversed and the bill dismissed, costs to be paid by appellees.

DISSENTING OPINION BY MR. JUSTICE BARNES:

Despite the provisions of the several Acts of Assembly requiring sheriffs to refund the unexpended balances of moneys deposited with them in their official capacity,[1] and in the face of the unanimous decision of this Court in *Trestrail, Admr. v. Johnson,* 298 Pa. 388,[2] the appellants, as executors of the will of the late Sheriff Cunningham, have retained in their possession large sums of money to which their decedent had no right or title at the time of his death. I do not believe that they have a right to attack in this proceeding the constitutionality of the Act of April 8, 1937, P. L. 284, which was intended to correct such a notoriously bad

---

[1] The Act of May 23, 1923, P. L. 347 (16 PS Sec. 2662) authorizes the sheriff to exact of any person requiring his services indemnity satisfactory to him, or prepayment of his official fees, mileage, expenses and legal costs, and provides that *"any money advanced for his charges, and not earned or expended, shall be refunded to the payer thereof."* The underscored language is also carried into the Act of June 1, 1933, P. L. 1141, Sec. 3, (16 PS Sec. 2661c).

[2] Holding that funds received by a sheriff in his official capacity should be paid over to his successor in office, rather than to his personal representatives upon his death, Chief Justice KEPHART said, (p. 398): "Public policy demands that the control of funds in the possession of public officers remain in the channel created by law for their administration, unless some imperative reason exists to place them elsewhere." And, (p. 399): "There are other reasons for keeping the funds in the sheriff's office for distribution. The money remains in the same court in which it originated. If it is turned over to an administrator, it goes to another court where the law has provided six months' delay before litigants receive their claims. The sheriff's office requires speedy distribution of funds like these."

practice. Furthermore, I am firmly convinced that the Act is a valid and constitutional exercise of legislative power.

First, let us examine the anomalous position assumed by the executors. They admit that they have no property rights in the funds which the Act requires them to turn over to the county treasurer, but they contend that the Act will deprive the *rightful owners* of the property without due process of law, and will impair the obligations of their "contracts" with the sheriff and his personal representatives. Nevertheless, should their contention prevail, and if they pursue the custom which the legislature has sought to terminate, they will distribute these moneys to the heirs or legatees of the late sheriff after the statutory period of limitation has barred the claims of the rightful owners. Their solicitude for these owners would seem to be more apparent than real. I am unable to find in their position any such equity as would justify this Court in departing from the familiar and salutary principles of constitutional law that every presumption favors the validity of an Act of Assembly (*Speer v. School Directors of Blairsville,* 50 Pa. 150; *Sugar Notch Boro.,* 192 Pa. 349), and that only a person whose constitutional rights are violated can complain: *Gottschall v. Campbell,* 234 Pa. 347; *Mesta Machine Co. v. Dunbar Furnace Co.,* 250 Pa. 472; *Com. v. Dollar Savings Bank,* 259 Pa. 138; *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421.

Even if those fatal obstacles to the consideration of the constitutional issues raised by the executors could be circumvented, I see no basis for the conclusion reached by the majority on those issues. Their principal objection to the statute is that the owners of these funds will be deprived of their remedy in assumpsit against the sheriff or his representatives, and given, as an inferior substitute, an unenforceable claim against the county treasurer dependent upon "proof of claim to the satisfaction of the county controller." To dem-

onstrate the inferiority of the substituted remedy, the majority first assume that the Act confers upon the controller the broadest discretion to "adjudicate" the merits of a claim, and secondly, that if he arbitrarily and capriciously fails to comply with the statute, no judicial review of his decision will be available to the claimant, because mandamus will not lie to compel the performance of a purely discretionary act. Both assumptions are, in my opinion, clearly fallacious.

The initial fallacy lies in failing to give to the words of the Act their plain meaning. There is no warrant whatever for assuming that the legislature intended that the controller should go behind the records of the sheriff to satisfy himself of the right of a claimant to the unexpended balance of his deposit. It is apparent that the controller is only to require such proof of the identity of the claimant as would satisfy him that he is the proper person to receive the unexpended balance of the deposit belonging to him and placed in the county treasury for safekeeping. Ordinary prudence would require the controller to insist upon proper identification of the claimant, and he would exercise such elementary precaution in the issuance of any warrant. Appellants, as fiduciaries, could not themselves pay out any of the moneys now in their possession without requiring the same identification of a claimant, and it is required by every banking institution in paying out the funds of a depositor. The Act gives the controller no broader discretion than he already possesses under the City Charter Act of 1919,[3] to require proof that the amount claimed in any warrant or claim is justly due to the person presenting it.[4]

---

[3] See Act of June 25, 1919, P. L. 581, Article XII, Section 3, (53 PS Sec. 3161, et seq.).

[4] "Whenever a warrant or claim shall be presented to him he shall have power to require evidence that the amount claimed is justly due, and for that purpose may summon before him any officer, agent, or employe of any department of the city or any

Nevertheless, the controller's discretion must be exercised reasonably, and mandamus will lie to correct its abuse. In *Com. ex rel. v. Philadelphia*, 176 Pa. 588, we said (p. 592) : "The duties of the controller as was held in *Com. v. George*, 148 Pa. 463, are partly ministerial and partly discretionary, and while the courts will not review his discretion exercised in a proper case, yet he is not above the law, and his discretion is not arbitrary but legal. When therefore he is called upon by the courts the facts must be made to appear sufficiently to show that they bring the case within his discretion and that it was exercised in obedience to law. On this subject the courts are the final authority, and their jurisdiction cannot be ousted by simply putting forth the assertion of discretionary power without showing that the matter was properly within such discretion." See also *Com. v. George*, 148 Pa. 463.

Under the present Act after satisfactory proof has been given the controller that the claimant is the proper party to receive the unexpended balance of a deposit, there remains no discretion in that officer to refuse to issue a warrant to the county treasurer, and his arbitrary failure to do so would subject him to an action of mandamus. These considerations completely answer the assertion made in the majority opinion that the Act leaves the owners of the funds at the mercy of a possibly capricious controller.

In construing this statute as conferring upon the controller the supreme power of a judicial tribunal of last resort, the majority is creating a purely fanciful objection. In *Sugar Notch Boro.*, supra, (p. 355) we stated the rule that "courts are not to be astute in finding or sustaining objections" to acts whose validity is questioned. And we have often held that where the

---

other person, and examine him upon oath or affirmation relative to such warrant or claim." This Section has been renumbered by the Act of June 25, 1937, P. L. 2094.

words of an act are susceptible of two meanings, one of which is constitutional and the other unconstitutional, we must adopt the construction consistent with the fundamental law. In *Mauch Chunk v. McGee,* 81 Pa. 433, Justice AGNEW said (p. 438) : "It is a cardinal rule . . . that all statutes are to be so construed as to sustain rather than ignore them; to give them operation if the language will permit, instead of treating them as meaningless; and I may add, or *treating them as invalid.*[5] . . . It is not the purpose or the duty of the court to catch at pretexts to avoid legislation, where it can be fairly reconciled with the Constitution."

Not only, therefore, would a claimant have the right to invoke the efficacious remedy of mandamus to enforce his claim under the Act of 1937, but he would have an additional remedy which the majority opinion entirely overlooks, namely the action of assumpsit to recover from the county treasurer such of his funds as were improperly withheld from him. In attempting to distinguish the case of *Com. v. Dollar Savings Bank,* supra, in which we sustained the constitutionality of the Act of April 17, 1872, P. L. 62, requiring savings banks to turn over to the State Treasurer deposits unclaimed after thirty years, the majority point out that there the depositors were not deprived of their property without due process because they were *expressly* given an action of assumpsit against the Commonwealth for their funds. A moment's reflection will make it abundantly clear that the grant of express authority to sue the Commonwealth was essential there because the sovereign cannot be sued in its own courts without its consent.

On the other hand, municipalities and their officers are not immune to suit, and it is not always necessary that a statute which imposes an obligation upon them should also provide a specific remedy. The courts are open to those whose statutory rights are violated to

---

[5] Italics supplied.

afford redress according to the common law, unless an exclusive remedy has been provided by the legislature. The majority concede that a claimant may compel the sheriff or his representatives to refund the balance of his deposit by an action in assumpsit. *Yet the Act of 1923 itself, which requires the deposit to be made, does not confer that remedy.* If, as the majority suggest, moneys could not be recovered in assumpsit from a public officer to whom they were entrusted for safekeeping unless the right were created by statute, these claimants would have no present remedy against the sheriff or his representatives. But clearly this is not the law.

In the hypothetical situations presented by the majority, therefore, a claimant under the Act of 1937 would have an appropriate remedy in mandamus or assumpsit, which would satisfy all the requirements of due process. An examination of the case of *Com. v. Dollar Savings Bank,* supra, in the light of the foregoing conclusion, reveals its close analogy to the present case. The statute there invoked, like the Act of 1937, did not provide for escheat, but for the protection of escheatable property for both the state and the owner. In one respect the Act of 1872 went further than the Act of 1937; it transferred *title* to the property from the owner to the state. Here the county treasurer merely has custody of the funds for *safekeeping.* And the same reasoning upon which we held that the Act of 1872 was not violative of the constitutional prohibition against the taking of property without due process of law applies therefore with even greater force to the Act here challenged.

Nor is there merit in the executors' contention that the Act of 1937 impairs the obligation of the owners' contracts with the sheriff for the return of the unexpended balances of their deposits. It must be borne in mind that they did not contract, expressly or by implication, with the sheriff *as an individual.* The stat-

ute required them to deposit these funds with him as a *public officer,* and it was only in that capacity that he had any right to receive the funds; consequently, if the Act of 1937 provides the owners with an equivalent or improved remedy, it has in no way impaired their contractual rights. In *Thompson v. Com.,* 81 Pa. 314, we stated (p. 323) : "The principle is not denied that when the remedy is a part of the contract it cannot be taken away, but this, as all the authorities agree, is where the remedy is essential to the contract, and the latter cannot be executed without it. But legislation which simply changes the public hand which receives and pays out, does not interfere with the remedy." See also *Beaver Co. B. & L. Assn. v. Winowich,* 323 Pa. 483, 493; *Poor District Case (No. 2),* 329 Pa. 410, 417.

A comparison of the remedy now available to the owners of these funds with that which they would have under the Act of 1937 leaves no doubt of the superiority of the latter remedy. At present, the owners have an action of assumpsit against private individuals, which may be barred, according to the majority opinion, by the running of the six-year period of the statute of limitations. If such an action should be prosecuted to judgment, it must be presented as a claim in the orphans' court having jurisdiction over the deceased sheriff's estate, within the time allotted by law for such claims. If the funds have been dissipated or misapplied, the owners must look to the executors personally. If by the decree of the orphans' court distribution of these funds is made to the heirs or legatees of the sheriff, as may occur if the owners do not appear and present their claims, they will thereafter be remediless.[6] And the sheriff's records, upon which the proof of their

---

[6] The Act of April 13, 1868, P. L. 948, Sec. 1 (16 PS Sec. 1632) requires actions on the official bond of a sheriff of Philadelphia County to be brought within five years of the date thereof (that is, within one year after the expiration of the sheriff's four-year term).

claims primarily depends, have been removed from the sheriff's office by the executors and are now retained in their close custody. In short, the recovery of these funds has been rendered so difficult, and so dependent upon the whim of individuals, as to discourage the owners in pursuing what remedy they may theoretically have.

On the other hand, the remedy created by the Act of 1937 is complete and effective. Section 1 provides that funds which remain unclaimed in the hands of the sheriff for a period of one year, or which are in his possession at the expiration of his term, shall be delivered *for safekeeping* to the county treasurer, a *bonded public officer*. The county treasurer will be furnished *with a list of the persons legally entitled thereto. The funds will remain the property of the depositors,* and segregated from other moneys in the county treasury, and may not be used for any other purpose. Section 2 provides for the *notification of the owners of the funds* to appear and claim them from the county treasurer, and for their *payment on the controller's warrant* after satisfying him of their right to receive the moneys, as has been shown. Section 3 will compel a sheriff, upon the expiration of his term, *to turn over to his successor the books and records relating to such funds,* so that they may remain in the appropriate public office, and not pass into the hands of private individuals and strangers. Section 4 requires the county treasurer to hold the funds for the benefit of claimants, *for a period of seven years.* Six months before they are escheated to the Commonwealth, claimants, if known, *must be given notice by mail,* and a *public advertisement of the proposed escheat* must be inserted for three consecutive weeks in two newspapers of general circulation. *Nor will the escheat itself completely bar the claims of those entitled to the funds who had no actual notice thereof, or who were under a disability.* Such persons will have

all rights of restitution preserved under the general escheat laws.[7]

Can it be doubted that the remedies which a claimant would have under this Act are not merely equivalent to, but immeasurably greater than those which he possessed prior to its passage? Can it be truly said that his "contract" is impaired in any way, or that he has been deprived of any of his property rights without due process of law? Can it be seriously contemplated that even a single claimant would prefer the uncertainty of whatever remedy he might now have to the direct and positive relief provided by this Act? It is ironical that the majority opinion in striking down the statute deprives the owners of the funds of that very protection which it professes an intention to preserve, leaving them, for all practical purposes, the empty husk of an illusory remedy.

The Act, as pointed out, not only gives to the real owners of the unexpended balances of the deposits every possible opportunity to obtain possession of them, but also provides that where such owners do not choose to claim their moneys, the funds shall ultimately pass to the Commonwealth, to which they would then belong, instead of to the family of a deceased sheriff who has not the slightest semblance of either a moral or legal right thereto.

I am also unable to see how the Act of 1937 violates the provision of Article III, Section 7, of our Constitution, forbidding the passage of special and local laws "changing methods for the collection of debts." The purpose of this section was "that no debtor, or class of debtors, should have imposed on him or them by legislation, a method for the collection of his or their alleged debts, which is not common to all other debtors of the same general character": *Cameron's Account,*

---

[7] See the Act of May 2, 1889, P. L. 66, Sec. 22, as amended by the Act of May 20, 1921, P. L. 946, Sec. 1, (27 PS Sec. 91).

287 Pa. 560, 565. Here the Act makes no special provision for the collection of the funds in the hands of the sheriff and his representatives, but affords a simple method whereby they may be discharged of all obligation by surrendering moneys owned by a large number of individuals to a single officer, the county treasurer. It is extremely difficult to see in what manner this offends the constitutional provision. The Act of 1872, already mentioned, requiring savings banks to turn over unclaimed funds to the state treasurer and discharging them from their debts to depositors is, in this respect also, similar to the present Act, yet in *Com. v. Dollar Savings Bank,* supra, in sustaining the constitutionality of that statute we expressly referred to this feature of its operation (p. 149).

Moreover it seems to me perfectly clear that the obligation of the sheriff or his executors with respect to the deposits is not a "debt" within the meaning of Article III, Section 7. The mere fact that assumpsit will lie to compel the sheriff to refund these moneys does not necessarily stamp the relationship as one of "debtor-creditor." Assumpsit is an action embracing many forms of obligation which are not, in the strict sense, debts. In its essential characteristics the relation between the sheriff and the depositor of these funds is one of the most elementary forms of a trust. The money is entrusted to the sheriff, as a public officer, for a specific purpose. The depositor retains a special interest in the funds; he does not part with all rights therein in exchange for the personal obligation of the sheriff. As we said in *Vosburgh's Est.,* 279 Pa. 329, 332; ". . . every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied." Again, in *Trestrail v. Johnson,* supra, we pointed out that although one who has received funds in an official capacity may be personally liable for their loss even without negligence because of his duty to keep them safely, he

is nevertheless a fiduciary. We said, (p. 396) : ". . . the relation established was not that of a mere debtor, but an express trust relation," adding that, if the sheriff mingled the funds with his private property, they could be traced as trust funds. Finally, we held that when a sheriff dies in office his successor, and not his personal representatives, is entitled to the moneys received by him in his official capacity. Surely, no further illustration of the fiduciary nature of his obligation to the owners of the funds here involved is necessary.

Since the sheriff is not an ordinary "debtor" within the meaning of the constitutional provision, and since the purpose of the Act is merely to conserve these trust funds for the benefit of the rightful owners, and, ultimately, the Commonwealth, there is no violation of Article III, Section 7. The fiduciary involved being a public officer, and the funds having been entrusted to him by legislative enactment, the constitutional power of the General Assembly to make provision for their conservation would seem to be unquestionable.

I am convinced that the Act before us is a valid and wholesome exercise of legislative authority to accomplish a long needed reform in the administration of an important public office. Because I can find no constitutional justification for denying to those whose property is withheld, and to the state, the protection and benefits of the statute, I must record my earnest dissent.

Mr. Justice STERN concurs in this opinion.